## CIRCUIT COURT OF THE CITY OF RICHMOND

Gerhard R. Gressman, Guardian of
Donna F. Gressman

v.

Peoples Service Drug Stores, Inc.

February 9, 1988

Case Nos. LL-692-4, LL-693-4

By JUDGE RANDALL G. JOHNSON

In these consolidated cases, the following facts are alleged:

On September 18, 1986, Gerhard R. Gressman went to defendant's store in the Meadowdale Shopping Center to have plaintiff's prescription for the drug chlorpromazine refilled.[1] Defendant, acting through its agents, employees, or servants, delivered to Mr. Gressman for the use of Mrs. Gressman a bottle of tablets which were described on the bottle's label as chlorpromazine. The tablets in the bottle, however, were not chlorpromazine. Instead, they were chlorpropamide. Over the next several days, plaintiff took the chlorpropamide, believing it to be

---

[1] Although Mr. Gressman is the nominal plaintiff in both actions, the term "plaintiff" as used herein refers to Donna F. Gressman, Mr. Gressman's ward and the person who was allegedly injured by defendant's conduct.

chlorpromazine. As a result, she has suffered severe and permanent injuries, including brain damage which has rendered her semi-comatose.

On March 16, 1987, plaintiff filed two separate motions for judgment against defendant. In LL-692-4, plaintiff alleged that defendant's delivery of the wrong drug constituted negligence. In LL-693-4, plaintiff alleged that the same act constituted a breach of an express warranty and a breach of an implied warranty of merchantability. Defendant demurred to both motions for judgment. Prior to a hearing or ruling on defendant's demurrers, the actions were consolidated for trial and, by order entered December 16, 1987, plaintiff was granted leave to file an amended motion for judgment in each case. Defendant has now demurred to the amended motions for judgment.

Plaintiff's amended motions for judgment are identical and include the causes of action alleged in the original motions for judgment. Count I alleges that defendant's act of delivering chlorpropamide instead of chlorpromazine constitutes a breach of an express warranty. Count II alleges that such delivery constitutes a breach of an implied warranty of merchantability. Count III alleges negligence on the part of defendant, its agents, employees, and servants. In fact, four distinct "acts of negligence" are stated:

a. That defendant and its agents, employees, and servants, acting in the scope of their employment, improperly filled plaintiff's prescription by delivering to plaintiff chlorpropamide instead of chlorpromazine as prescribed by plaintiff's physician;

b. That defendant and its agents, employees, and servants, acting in the scope of their employment, delivered to plaintiff a bottle bearing a label improperly describing the medication contained in the bottle as chlorpromazine, when, in fact, the bottle contained chlorpropamide;

c. That defendant and its agents, employees, and servants, acting in the scope of their emp-

loyment, failed to follow appropriate procedures and employ appropriate safeguards in the filling of plaintiff's prescription so as to prevent the error of placing the wrong medication in a bottle bearing a label identifying the medication as chlorpromazine and delivering the bottle to plaintiff; and

    d. That defendant and its agents, employees, and servants, acting in the scope of their employment, permitted incompetent and unqualified persons to fill or participate in the filling of plaintiff's prescription.

Finally, Count IV alleges the same acts of negligence as are alleged in Court III, but contains the additional allegation that defendant is not a "health care provider" as defined in the Virginia Code sections dealing with claims of medical malpractice. *See* Chapter 21.1 (Section 8.01-581.1 *et seq.*) of Title 8.01 (hereinafter referred to as the "Medical Malpractice Act" or "the Act.").[2] Compensatory damages in the amount of $15,000,000 are sought in each amended motion for judgment.

Defendant's demurrer to the amended motions for judgment challenges each count thereof. With respect to Counts I and II, defendant argues that no action for breach of warranty--express or implied--can be maintained against a pharmacy for injuries arising out of a prescription drug. With respect to Count III, defendant contends that plaintiff has not complied with the notice requirements of the Act for actions involving allegations of medical malpractice. Defendant also asserts that the last three acts of negligence set out in Counts III and IV (b, c, and d above) do not state causes of action. Finally, defendant demurs to the amended motions for judgment in their entireties to the extent that they seek damages in excess of the $1,000,000 limitation or "cap" set out in the Act. *See* § 8.01-581.15. Each of these challenges raises serious and complex legal issues which have not yet been addressed by our Supreme Court. The parties have

    [2] The significance of this allegation will be discussed infra.

filed extensive briefs, and have presented oral argument to the court. The matters are now ripe for a ruling on the demurrer.[3]

1. *Application of the Medical Malpractice Act to Defendant*

A threshold question at this stage of the proceeding is whether Peoples Service Drug Stores, Incorporated, is a "health care provider" as that term is used in the Medical Malpractice Act. If it is, then each of the issues raised in defendant's demurrer must be addressed. If it is not, then the question of appropriate notice (*see* Section 8.01-581.2), and the question of the statutory cap are not relevant. The definition of "health care provider" is set out in § 8.01-581.1:

> "*Health care provider*" means a person, corporation, facility or institution licensed by this Commonwealth to provide health care of professional services as a physician or hospital, dentist, pharmacist, registered or licensed practical nurse, optometrist, podiatrist, chiropractor, physical therapist, physical therapy assistant, clinical psychologist, health maintenance organization or a nursing home as defined in § 54-900 of the Code of Virginia except those nursing institutions conducted by and for those who rely upon treatment by spiritual means alone through prayer in accordance with a recognized church or religious denomination, or an officer, employee or agent thereof acting in the course and scope of his employment.

To the extent pertinent here, Peoples is a health care provider if it is a "corporation. . . licensed by this Commonwealth to provide health care or professional services as a. . . pharmacist. . . ." The parties agree that Peoples is a corporation. It also seems clear that at least as far as its pharmacy is concerned, Peoples

---

[3] Also before the court are several discovery motions filed by plaintiff. They will also be addressed herein.

" provide[s] health care or professional services. . . ."[4] What the parties disagree on is whether Peoples is "licensed . . . as a pharmacist."

As is true with the term "professional services," the term "pharmacist" is not defined in the Medical Malpractice Act. It is, however, defined in Code § 54-524.2, which is part of the Drug Control Act:

> (24) *"Pharmacist"* means a natural person who holds a valid license issued by the Board to practice pharmacy under the laws of this State.[5]

While the above definition is preceded by the language "[a]s used in this chapter," this court can think of no good reason why that definition should not also be applicable here. The Drug Control Act regulates the practice of pharmacy in Virginia, and no one can practice pharmacy unless he or she has complied with the provisions of that Act. In the absence of a different definition in the Code provisions dealing with medical malpractice, it makes absolutely no sense to define the term "pharmacist" any differently than it is defined in the Drug Control Act. And since that definition limits pharmacists to *natural* persons, it would seem that a corporation such as Peoples cannot be a "pharmacist" within the meaning of the Medical Malpractice Act.

Naturally, plaintiff argues that the definition of "health care provider" contained in § 8.01-581.1 must be read literally. Since only natural persons can be pharmacists, and since corporations cannot be "licensed

---

[4] "Health care" is defined in Section 8.01-581.1 as: "[A]ny act, or treatment performed or furnished, or which should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical diagnosis, care, treatment or confinement." While the term "professional service" is not defined in Section 8.01-581.1, the definition of that term in other titles of the Code, as well as the plain language of the term itself, makes it clear that the filling of a prescription is a professional service. See Virginia Code Sections 13.1-543 and 54-874.

[5] The "Board" referred to in the definition is the State Board of Pharmacy.

by this Commonwealth. . . as a. . . pharmacist," plaintiff maintains that the plain language of the statute excludes Peoples from its coverage. This is true, according to plaintiff, not only because no ambiguity exists in the statute's language (*see Brown v. Lukhard*, 229 Va. 316, 321, 330 S.E.2d 84 (1985)), but also because the medical malpractice provisions of the Code are in derogation of the common law and must be strictly construed. *See C. & O. Railway v. Kinzer*, 206 Va. 175, 181, 142 S.E.2d 514 (1965).

On the other hand, defendant contends that § 8.01-581.1 must be construed in such a way that Peoples is a "health care provider" here. First, defendant argues that Peoples can have no greater liability than its servant; and if its servant is a health care provider, then so is Peoples. Second, defendant argues that since a corporation can only act through its officers, agents, and employees (*see Bardach Iron and Steel Co., Inc. v. Charleston Port Terminals*, 143 Va. 656, 672, 129 S.E. 687 (1925)), Peoples itself must be deemed to be a "pharmacist" when it fills prescriptions. The court does not agree.

With regard to the vicarious liability of Peoples, it is not true that a master's liability can be no greater than the liability of his servant. To the contrary, the common law ordinarily does not permit an employer to escape liability because his employee is personally immune. *See Norton v. United States*, 581 F.2d 390, 398 (4th Cir. 1978) (Butzner, J., dissenting); *Worrell v. Worrell*, 174 Va. 11, 25, 4 S.E.2d 343 (1939) (approving cases from other states permitting recovery against employers of family members based on such family members' negligence as employees, even though intra-family immunities protected the employees themselves from liability.) *See also* C.J.S. *Master & Servant*, § 561. And Restatement (Second) of Agency § 217 (1958) states:

> In an action against a principal based on the conduct of a servant in the course of employment . . .
>
> (b) The principal has no defense because of the fact that. . .
>
> (ii) the agent had an immunity from civil liability as to the act.

Thus, the fact that an employee is protected or even immune does not necessarily protect or immunize the employer.

With regard to Peoples' status "when it fills prescriptions," the language of the statute controls. That language clearly and unambiguously states that a *Pharmacist*, not a pharmacy or an entity which employs a pharmacist, is a "health care provider." Indeed, the definition of pharmacist found in the Drug Control Act (§ 54-524.2(24)) is immediately followed by the definition of "pharmacy." If the legislature had intended to include pharmacies within the definition of "health care provider," it would have been very easy for it to have done so. It would have been just as easy to have included within the definition of "health care provider" any employer of a health care provider. The fact that the legislature did not include such provisions convinces this court that such provisions were not intended. The court refuses to now read them into the statute.

Finally, defendant argues that to construe the definition of "health care provider" to include pharmacists but not pharmacies will "lead to absurdity." Defendant's Brief at 18. For example, according to defendant, one who wishes to proceed against a pharmacist would have to comply with the notice requirements, panels, and waiting periods of the Medical Malpractice Act, while one choosing to pursue only the pharmacy could proceed without restriction. In addition, recovery in actions against individual pharmacists would be limited to $1,000,000, but there would be no similar limitation on actions against pharmacies. While defendant's concerns in this regard may be well-founded, the court is bound to apply the subject statute as written, not as the parties wish it had been written. Moreover, the court notes the following findings of the General Assembly in enacting the $750,000 [now $1,000,000] cap on medical malpractice claims:

Whereas, the General Assembly has determined that it is becoming increasingly difficult for health care providers of the Commonwealth to obtain medical malpractice insurance with

limits at affordable rates in excess of $750,000; and

Whereas, the difficulty, cost and potential unavailability of such insurance has caused health care providers to cease providing services or to retire prematurely and has become a substantial impairment to health care providers entering into practice in the Commonwealth and reduces or will tend to reduce the number of young people interested in or willing to enter health care careers; and

Whereas, these factors constitute a significant problem adversely affecting the public health, safety and welfare which necessitates the imposition of a limitation on the liability of health care providers in tort actions commonly referred to as medical malpractice cases; now, therefore,

Be it enacted. . . . *Acts of Assembly*, 1976, at 784.

It will be noted that the concerns expressed in the foregoing findings are for "health care providers entering into practice," or "retire[ing] prematurely," or for "young people interested in or willing to enter health care careers." None of those concerns are for corporations or other entities which *employ* health care providers, nor are any concerns expressed for pharmacies or other "things." While § 8.01-581.1 specifically does include three "things," hospitals, nursing homes, and health maintenance organizations, the strict construction rule of *C. & O. Railway v. Kinzer*, *supra*, precludes this court from adding any others. Accordingly, it is the holding of this court that defendant is not a "health care provider" within the meaning of Va. Code Section 8.01-581.1. Thus, so much of defendant's demurrer as is based on plaintiff's alleged failure to give adequate

notice under § 8.01-581.2, and seeks protection of the $1,000,000 cap of § 8.01-581.15, is overruled.[6]

## 2. *Breach of Warranty*[7]

Counts I and II of the amended motions for judgment allege that defendant's delivery of the wrong drug to plaintiff constitutes a breach of express warranty and a breach of an implied warranty of merchantability. Plaintiff bases these counts on the Uniform Commercial Code, and cites § 8.1-105 to argue that the provisions of the UCC override any conflicting provisions of the Medical Malpractice Act. Section 8.1-105 provides:

This act being a general act intended as a unified coverage of its subject matter, no part of it shall be deemed to be impliedly repealed by subsequent legislation if such construction can reasonably be avoided.

In addition, § 8.1-102 of the UCC provides, in part:

(1) This act shall be liberally construed

---

[6] While the issue of professional corporations is not presented in this case, the court notes that such corporations are significantly different from corporations such as Peoples. Specifically, professional corporations can only be organized "for the sole and specific purpose of rendering professional service," and may have as shareholders "only individuals who themselves are duly licensed or otherwise legally authorized within this Commonwealth to render the same professional service as the corporation." Va. Code Section 13.1-543. Whether this "unity of identity" is sufficient to exclude professional corporations from the holding of this case is specifically not decided here.

[7] The court's holding that Peoples is not a health care provider does not make the breach of warranty issue moot. While Peoples may not rely upon its servant's status as a health care provider to take advantage of "favorable" provisions of the Act, its liability under Counts I and II of the amended motions for judgment can only be based on the act of its pharmacist-servant. This is true since only a pharmacist, and not a pharmacy, may dispense prescription drugs. See Va. Code Sections 54-524.48 through 54-524.52.

and applied to promote its underlying purposes and policies.

On the other hand, defendant contends that in preparing and dispensing prescription drugs, a pharmacist is not a merchant selling goods, but is a professional providing services. As such, the law of warranty does not apply. *See Vann v. Harden,* 187 Va. 555, 565, 47 S.E.2d 314 (1948); *Gagne v. Bertran,* 43 Cal. 2d 481, 487, 275 P.2d 15 (1954); *J. O. Morry Stores v. Skoog Constr. Co.,* 38 Ill. App. 3d 747, 348 N.E.2d 474 (1976).

With regard to health care services, each party cites several cases to support the argument made by that party. In *Providence Hospital v. Truly,* 611 S.W.2d 127 (Tex Civ. App. 1980), the plaintiff was injured in the operating room by the use of a drug which was contaminated as a result of a defective container. The drug had been dispensed by the hospital pharmacy, and the hospital had assessed the plaintiff a separate charge for the drug on his bill. The court held that this transaction was a sale of goods subject to UCC warranties.

By contrast, the court in *Foster v. Memorial Hospital Assoc. of Charleston,* 219 S.E.2d 960 (W. Va. 1975), while acknowledging that hospitals sell a great many products to their patients, held that hospitals are basically providers of services and are not subject to warranty actions arising out of those products.

In *Murphy v. E. R. Squibb, Inc.,* 40 Cal. 3d 672, 221 Cal. Rptr. 447, 710 P.2d 247 (1985), the court stated:

> It seems clear to us that the pharmacist is engaged in a hybrid enterprise, combining the performance of services and the sale of prescription drugs. It is pure hyperbole to suggest, as does plaintiff, that the role of the pharmacist is similar to that of a clerk in an ordinary retail store. With a few exceptions, only a licensed pharmacist may dispense prescription drugs, and as indicated there are stringent educational and professional requirements for obtaining and retaining such a license. The pharmacist must not only use skill and care in accurately filling and labeling a prescribed

drug, but he must be aware of problems regarding the medication, and on occasion he provides doctors as well as patients with advice regarding such problems. In counseling patients, he imparts the same kind of information as does a medical doctor about the facts of the drug prescribed. A key factor is that the pharmacist who fills a prescription is in a different position from the ordinary retailer because he cannot offer a prescription for sale except by order of the doctor. In this respect, he is providing a service to the doctor and acting as an extension of the doctor in the same sense as a technician who takes an x-ray or analyzes a blood sample on a doctor's order. 40 Cal. 3d at 678.

Relying upon the character and nature of the pharmacist's service, and upon pharmacy statutes similar to Virginia's, the California Supreme Court held that pharmacists and the business enterprises which employ them are immune from the strict liability doctrine which would apply to ordinary sellers. To the same effect are *McLeod v. W. S. Merrell Co.*, 174 So. 2d 736, 639 (Fla. 1965) (a transaction involving a prescription drug "is not one out of which a warranty, even by the most modern standards, would be implied"), *Batiste v. American Home Products*, 39 N.C. App. 1, 231 S.E.2d 269 (1977) (a pharmacy is not liable under the Uniform Commercial Code and general warranty principles for injury arising out of a prescription drug).

In Virginia, the Court held in *Commonwealth v. Bluefield Sanitarium*, 216 Va. 686, 222 S.E.2d 586 (1976), that under the Virginia Retail Sales and Use Tax, the dispensing of drugs by a retail pharmacy located in a hospital is "a sale of drugs on a 'prescription work order'." 216 Va. at 688. The Court added that while the hospital itself is primarily engaged in rendering services, a retail pharmacy which buys drugs for resale to a consumer "is not engaged in the service business." *Id.* at 689.

And in *Highland Pharmacy v. White*, 144 Va. 106, 131, S.E. 198 (1926), cited by both parties, the Court stated:

> Where the retailer fills a prescription or buys in bulk and bottles the drug and places his own label on it, he impliedly warrants it to be what he represents it to be, and upon proof of the slightest negligence is liable for any injury resulting from the use of such drug. 144 Va. at 109.

While the above cases are helpful, it is noted that one of them were decided under an act similar to Virginia's Medical Malpractice Act. This court believes that the Act removes the transaction here from the holdings of those cases.

As already discussed above with regard to whether Peoples is a health care provider, a pharmacist is defined in § 54-524.2 as a person licensed to "practice pharmacy under the laws of this State." The same Code section defines the "practice of pharmacy" as follows:

> [T]he personal health *service* that is concerned with the art and science of selecting, procuring, recommending, administering, preparing, compounding, packaging and dispensing of drugs, medicines and devices used in the diagnosis, treatment, or prevention of disease, whether compounded or dispensed on a prescription or otherwise legally dispensed or distributed. . . . (Emphasis added.)

As also previously discussed, § 8.01-581.1 defines "health care" as:

> [A]ny act, or treatment performed or furnished, or which should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical diagnosis, care, treatment or confinement.

Since a pharmacist is unquestionably a "health care provider," and since the delivery of a prescription drug is unquestionably an "act," the delivery of a prescription drug to a patient by a pharmacist is unquestionably "health care." Moreover, each of the acts enumerated in the above-

quoted portion of § 54-524.2, except the actual act of dispensing, *lead to* the actual act of dispensing. Obviously, pharmacists do not select, procure, recommend, administer, prepare, compound, or package drugs simply for their own edification. They engage in those acts in order to dispense. Only a tortured construction of the Medical Malpractice Act would include within its provisions all of the acts performed by pharmacists *except* the ultimate act *to* which all others are merely preparatory. Simply put, there is no rational reason why a pharmacist would select, procure, recommend, administer, prepare, compound, or package a drug unless he or she ultimately sells, or at least expects to sell, the drug itself. This court refuses to believe that the legislature, having specifically included pharmacists within the definition of "health care provider," and having further defined "health care" as "*any* act" (emphasis added), would exclude from the Act's coverage the one act by which the pharmacist makes his or her living. Since the legislature was specifically concerned with the number of health care providers prematurely retiring, as well as the "number of young people interested in or willing to enter health care careers,"[8] such construction would substantially defeat the very purpose of the Act. Thus, under either a strict construction test ("*any* act"), or under a construction which takes into consideration the Act's purposes, a sale of a prescription drug by a pharmacist is necessarily "health care." Accordingly, such a sale is part and parcel of the "personal health *service*" which is the practice of pharmacy. *See* 54.524.2(26a) (emphasis added). As such, it is not a "sale" within the meaning of the Uniform Commercial Code, and the court so holds. Peoples' demurrer to Counts I and II, therefore, will be sustained.[9]

---

[8] See supra.

[9] Since plaintiff's original motion for judgment in LL-693-4 alleged only a breach of express and implied warranties, and since the amended motion for judgment in that case is identical to the amended motion for judgment in LL-692-4, the court's sustaining defendant's demurrer to the breach of warranty allegations requires dismissal of LL-693-4. The order to be entered will provide for such dismissal.

### 3. Negligent Hiring And/Or Retention Of An Employee

Paragraphs 21d and 26d of the amended motions for judgment allege that Peoples "and its agents, employees and servants, acting in the scope of their employment, permitted incompetent and unqualified persons to fill or participate in the filling of" plaintiff's prescription. In other words, plaintiff alleges that defendant negligently hired and/or retained an incompetent employee. *See* Plaintiff's Memorandum 11-12. In support of her contention that such a cause of action is recognized in Virginia, plaintiff cites several cases in which recoveries upon similar claims were allowed. *See, e.g., Norfolk Protestant Hospital v. Plunkett*, 162 Va. 151, 173 S.E. 363 (1934); *Davis v. Merrill*, 133 Va. 69, 112 S.E. 628 (1922). As even plaintiff concedes, however, the law in Virginia is that where a full recovery can be had under the doctrine of *respondeat superior* for the negligent act of an employee, the issue of the employee's competence is immaterial. *See* Plaintiff's memorandum at 19. As was said in *Aronovitch v. Ayres*, 169 Va. 308, 193 S.E. 524 (1937):

> A master is responsible for damages suffered through the negligence of his servant, although that servant be in fact competent or incompetent. Plainly he cannot escape liability by showing that his servant was a skilled worker, and that his skill was one of the reasons which brought about employment. Nor is he made liable by the mere fact that an accident occurred. Negligence also must be shown. If negligence is not made to appear, there is no liability, however unskilled the workman may be or however careless he may have been on former occasions. Between incompetency, carelessness and the accident there must be some causal connection. One may not be convicted simply because his character is bad, nor can masters be mulcted in damages merely because they were careless in the selection of their servants. 169 Va. at 321-22. *See also P. L. Farmer, Inc. v. Cimino*, 185 Va. 965, 972-73, 41 S.E.2d 1 (1947).

Since the court has now ruled that Peoples is not a health care provider, a full recovery is available to plaintiff without the limitation of the $1,000,000 cap of § 8.01-581.15. Consequently, plaintiff's negligent hiring and/or retention claim cannot stand, and defendant's demurrer to it will be sustained.[10]

## 4. *Discovery Motions*

The court has carefully reviewed the outstanding discovery requests of the plaintiff, and defendant's objections thereto, in light of the rulings stated above. The court is of the opinion that Interrogatory No. 3 of Plaintiff's First Interrogatories to Defendant, and Interrogatory Nos. 1 through 4 of Plaintiff's Third Interrogatories to Defendant, are appropriate and should be answered. Also appropriate and deserving of a supplemental response is Request No. 4 of Plaintiff's First Requests for Admissions. The court does not believe, however, that the remaining items included in plaintiff's motions to compel are appropriate in light of the ruling on defendant's demurrer, and defendant's objections thereto are sustained.

## 5. *Pretrial Order*

Finally, plaintiff has moved the court for entry of a pretrial order, and has tendered a sketch of such an order to the court. The court believes that entry of a pretrial order in this action is appropriate under Rule 4:13 of the Rules of the Supreme Court of Virginia. Accordingly, counsel for the parties are directed to confer in an attempt to prepare an agreed-upon sketch of a pretrial order for submission to the court on or before February

---

[10] While defendant's demurrer also challenges subparagraphs b and c of paragraphs 21 and 26 of the amended motions for judgment (see supra), no argument in support of that challenge is contained in its Memorandum. In any event, the court holds that the allegations contained in those subparagraphs, when read in light of the other allegations of the amended motions for judgment, do state valid causes of action. Accordingly, defendant's demurrer to those subparagraphs is overruled.

19, 1988. If the parties cannot agree upon such an order, counsel shall submit to the court, with copies to opposing counsel, their respective drafts no later than February 19. Counsel for plaintiff may, in light of the rulings on defendant's demurrer, submit a new draft of a pretrial order, or may rely on the one tendered with plaintiff's motion. The court will thereafter enter a pretrial order which will be binding in this case.