## CIRCUIT COURT OF THE CITY OF RICHMOND

Allen Michael Huff,
an infant, etc.

v.

Medical College of Virginia
Associated Physicians et al.

December 20, 1994

Case No. LU-3676-3

BY JUDGE T. J. MARKOW

The parties came on December 14, 1994, on the Defendants' Special Jurisdictional Plea in Bar, and evidence was presented and argument was heard.

Based on the amended motion for judgment and the evidence, Defendants argue that the Plaintiff, Allen Michael Huff, suffers from a birth-related neurological injury and his exclusive remedy is under Chapter 50 of Title 38.2 of the Code (Va. Code Ann. §§ 38.2-5000 to 38.2-5021), the Virginia Birth-Related Neurological Injury Compensation Act. As the Plaintiff was born in August, 1988, the Code in effect on that date governs rather than the Code as in effect now.

The primary issue is whether the Plaintiff suffered a birth-related neurological injury which is defined as "injury to the brain or spinal cord of an infant caused by the deprivation of oxygen, or mechanical injury occurring in the course of labor, delivery or resuscitation in the immediate post delivery period in a hospital which renders the infant permanently nonambulatory, aphasic, incontinent, and in need of assistance in all phases of daily living." Va. Code Ann. § 38.2-5001. (Emphasis added.)

The parties stipulate that the Plaintiff's problems are claimed by him to be the result of an injury to his brain caused by deprivation of oxygen or mechanical injury in the course of labor, delivery or resuscitation in the immediate post delivery period. Plaintiff argues, however, that his injuries did not occur in a "licensed hospital," as his hospital, The Medical College of Virginia, is exempted from licensure as a hospital. As the result of other rulings the court makes, it need not reach the licensure issue. Further, Plaintiff argues that he does not meet the definition of being permanently nonambulatory, aphasic (without the ability to speak), incontinent and in need of assistance in all phases of daily living. Plaintiff argues and the court agrees that all four of these characteristics must be found and that they must be permanent.

The evidence is in dispute on the permanency of various aspects of the Plaintiff's condition. The court finds that the Plaintiff is permanently aphasic, incontinent, and in need of assistance in all phases of daily living. At age six, he has reached the developmental age of, at best, a child of ten to eleven months. At best, the evidence supports that he will not advance beyond twenty-four months. Should Plaintiff advance that far, it is likely that he will not remain incontinent. It is unlikely that he will develop to the twenty-four months age level.

There is no evidence to support a finding, however, that this child will ever be able to meaningfully converse or be able to perform the normal functions of daily living without assistance. The court finds then that he is permanently aphasic, incontinent, and in need of assistance in all phases of daily living.

The sole issue, then, is whether he is nonambulatory and whether that is permanent.

Currently, the Plaintiff is able to stand with "maximum" assistance. He is able to move his legs in a walking motion so long as he is being held. He is unable to crawl and moves around by rolling over the floor or by being pushed about in a wheel chair. His physician says that at best he will become a "house walker," i.e., he will be able to get around in a house by walking with some assistance such as a walker or by using walls and furniture for support. He will never be able to walk about in the community. Defendants' physician agrees with the treating physician as to his current condition.

What does it mean to be "nonambulatory"? "Ambulatory" is defined as "1. pertaining to walking or a person who walks. 2. able to walk or move about. 3. adapted to walking. 4. moving from one place to another; not stationary. 5. in medicine, designating or of patients who are not bedridden." Webster's New Twentieth Century Dictionary, 2d ed.

"Nonambulatory" is synonymous with "bedridden," or unable to walk or move about in any way. The court does not find that the Plaintiff is bedridden, unable to walk or move about, even now. While this Plaintiff can stand, he can only walk with assistance. At best, he will improve little. He is, however, ambulatory. He is able to move about. He is not bedridden. Accordingly, he does not have a "birth related neurological injury" so as to be within the contemplation of the Act. His remedies, if any, lie within the courts and not within the Workers' Compensation Commission. Defendants' plea must fail. Because of this, the other issues raised need not be reached.

### February 6, 1995

This matter is before the court on Defendant's MCV Associated Physicians' and VCU Obstetrics and Gynecology's motion to limit Huff's recovery pursuant to Va. Code Ann. § 8.01-581.15, which provides "in any verdict returned against a health care provider in an action for malpractice . . . the total amount recoverable for any injury . . . shall not exceed one million dollars . . . ."

MCVAP and VCUOBGYN argue that under the theory of respondeat superior, their potential liability is necessarily premised on the acts of their agents, Drs. Soper and Barton. Therefore, because their potential liability derives from their agents, so too should the potential extent of their liability. Drs. Soper and Barton, as "persons licensed by this Commonwealth to provide health care or professional services as [ ] physician[s]," meet the statutory definition of "health care provider." See Va. Code Ann. § 8.01-581.1. MCVAP and VCUOBGYN contend because any recovery against their agents when sued for medical malpractice cannot exceed one million dollars, neither should any recovery against them. *Taylor v. Mobil Corp.*, 248 Va. 101 (1994), is cited as controlling authority by the Defendants.

Huff counters *Taylor* is not controlling. Huff argues the motion should be denied because first, even under the theory of *respondeat superior*, the master and servant are independent tortfeasors, and second, the named defendants are not "health care providers" under Va. Code Ann. § 8.01-581.1.

The court agrees with Huff and holds the statutory cap does not apply. MCVAP and VCUOBGYN over read the holding in *Taylor*. The case does not stand for the blanket proposition that any employer of a "health care provider" is only liable to the extent of his employee, and therefore entitled to the benefit of the statutory cap. The Supreme Court relied on a jury instruction, unique to the case before it, in holding Mobil Corporation might be entitled to the benefit of the medical malpractice cap available to its physician employee.

> Without objection, the jury was instructed that Mobil was responsible for any malpractice of Dr. Johnson causing Taylor's death and entitled to any defense available to Dr. Johnson. Therefore, *under the law of this case*, Mobil's claim of entitlement to the benefit of the medical malpractice cap stands or falls with the same claim made by Dr. Johnson. [Emphasis added.]

248 Va. at 108. Nothing in the Court's opinion even hints that its intent was to create a bright line rule that any time an employer of a "health care provider" is sued it would be entitled to the benefit of the statutory cap. *Taylor* merely represents the law of a particular case on this issue.

A judge of this circuit has held in *Gressman v. Peoples Drug Stores*, 10 Va. Cir. 397 (1988), "it is not true that a master's liability can be no greater than the liability of his servant." This court adopts the rationale of *Gressman*. The *Taylor* decision does nothing to displace the authority of *Gressman*. Therefore, defendants are not entitled to the benefit of the medical malpractice cap.

Further, MCVAP and VCUOBGYN fail the definition of "health care provider" under Va. Code Ann. § 8.01-581.1. Both entities are private corporations, neither licensed by the Commonwealth to provide health care or professional services as a physician, hospital, nursing home, nor health maintenance organization.

Accordingly, the Motion to Limit Recovery is denied.