MARY M. TAYLOR, PERSONAL REPRESENTATIVE
OF THE ESTATE OF HARRY O. TAYLOR

V.

MOBIL CORPORATION, ET AL.

Record No. 930912

MOBIL CORPORATION, ET AL.

V.

MARY M. TAYLOR, PERSONAL REPRESENTATIVE
OF THE ESTATE OF HARRY O. TAYLOR

Record No. 930913

June 10, 1994

Present: Carrico, C.J., Compton, Stephenson, Whiting, Lacy, and Keenan, JJ.,
and Poff, Senior Justice

*Randell C. Ogg (Robert E. Sarazen; Sherman, Meehan & Curtain*, on briefs), for appellant. (Record No. 930912)

*John Charles Thomas; Harry M. Johnson, III (Lori M. Elliott; John J. Brandt; Hunton & Williams, Slenker, Brandt, Jennings & Johnston*, on brief), for appellees. (Record No. 930912)

*John Charles Thomas; Harry M. Johnson, III (Lori M. Elliott; John J. Brandt; Hunton & Williams; Slenker, Brandt, Jennings & Johnston)* on briefs), for appellants. (Record No. 930913)

*Randell C. Ogg (Robert E. Sarazen; Sherman, Meehan & Curtin*, on brief), for appellee. (Record No. 930913)

JUSTICE WHITING delivered the opinion of the Court.

In each of these two appeals from a judgment against a negligent physician and his employer, the primary issue involves a statutory restriction on the plaintiff's tort recovery rights. In one appeal, the primary issue is whether the plaintiff's action is barred by former Code § 65.1-40, now Code § 65.2-307, the exclusive remedy provision of the Virginia Workers' Compensation Act (the Act).[1] In the other appeal, the primary issue is whether the defendants are entitled to the protection of the limited recovery of damages provided in Code § 8.01-581.15 (the medical malpractice cap).

In the court below, the plaintiff prevailed on the workers' compensation issue and on the factual issue of the physician's negligence. The defendants prevailed on their claim of entitlement to the medical malpractice cap. In accord with settled appellate principles, we state the facts relating to each issue and all fair inferences to be drawn from those facts in the light most favorable to the party prevailing on each issue.

Dr. Clarion E. Johnson, a cardiologist and an employee of Mobil Corporation (Mobil), worked at Mobil's clinic. The clinic served employees of Mobil and its wholly owned subsidiary, Mobil Oil, and was located at the joint headquarters of those corporations in Fairfax County. In March 1990, Dr. Johnson conducted a routine physical examination of Harry O. Taylor, an executive

---

[1] At the time the plaintiff's cause of action arose, the Act was contained in Code §§ 65.1-1 to -163. Those sections were revised, rearranged, amended, and recodified effective October 1, 1991 (Acts 1991, ch. 355) and are now included in Code §§ 65.2-100 to -1310. However, the pertinent language in the statutes controlling this decision has not been changed.

employed by Mobil Oil. Because of Taylor's high cholesterol count, Dr. Johnson concluded that Taylor was in a high-risk category for coronary artery disease.

On January 23, 1991, Taylor consulted Dr. Johnson at the clinic about mouth sores. Taylor did not tell Dr. Johnson that he had been experiencing what Taylor thought were "heartburn" symptoms for a few days prior to this consultation because Taylor thought he had a virus or stomach flu. However, his "heartburn" persisted and, a week later, Taylor consulted Dr. Johnson at the clinic about these symptoms. Dr. Johnson gave Taylor a bottle of nitroglycerin pills and told him to take one when he experienced these pains.[2] Dr. Johnson also scheduled a stress test in the clinic on February 7.

On February 2 and 4, Taylor experienced heartburn symptoms and took a nitroglycerin pill on each occasion, but it failed to provide relief.[3] Taylor's February 4 pains occurred after he had been using his treadmill at home. As a result, Taylor decided not to use his treadmill until after he had his stress test on February 7.

On February 7, in the presence of Dr. Johnson, Taylor took the stress test at the clinic. As part of that test, Taylor exercised as an electrocardiogram machine measured the electric activity of his heart which was recorded in graph form. Those measurements indicated that he was suffering from heart disease and experiencing chest pain. Taylor also told Dr. Johnson that he had experienced heartburn symptoms while using his treadmill at home. Nevertheless, Dr. Johnson told Taylor that he was not suffering from heart disease, that he could resume use of his treadmill, and that Taylor should return to the clinic in a year.

Taylor resumed the use of his treadmill, and he took antacids to counteract the continuing burning sensations he felt in his chest. Taylor died on the evening of February 14 after suffering a massive heart attack at home. A postmortem examination revealed that, over a period of years, one of Taylor's three major coronary arteries had become clogged with deposits of cholesterol, forming plaque on the walls of the artery.

---

[2] Dr. Johnson and other doctors testified that nitroglycerin is ordinarily used to treat an acute attack of angina pectoris, but Dr. Johnson maintained that he had prescribed it in Taylor's case as a "trial." Further, another doctor testified that "heartburn" symptoms are often a "pain characteristic that is typical of angina pectoris."

[3] A medical expert testified that the ineffectiveness of a single nitroglycerin pill may have indicated the severity of the heart disease.

According to the testimony of the medical experts at trial, plaque buildup in arteries eventually cracks and forms blood clots, further restricting blood flow. The additional restriction manifests itself in chest pain or pressures in the chest that are warning signs of a possible heart attack. If the condition is not properly treated, a blood clot formed by broken off plaque may block the flow of blood sufficiently to cause a heart attack, as it did in Taylor's case.

Mary M. Taylor, Taylor's widow, consulted counsel regarding a possible wrongful death action against Dr. Johnson and his employer, Mobil. Upon learning of this, defendants also consulted counsel. Defendants' counsel thereafter discovered that Dr. Johnson's license to practice medicine in the Commonwealth had lapsed on December 31, 1990.

Although Dr. Johnson had inquired about the renewal of his license prior to its expiration, he did nothing further after the licensing authority erroneously informed him that it had already been renewed. In fact, only Dr. Johnson's right to prescribe drugs had been renewed in 1990. As soon as Dr. Johnson discovered that he had been misadvised, he applied for and received the necessary license to practice medicine in Virginia.

Mrs. Taylor, as personal representative of Taylor's estate, brought this wrongful death action against Dr. Johnson and Mobil,[4] charging Dr. Johnson with negligence in Taylor's care and treatment, and charging Mobil with negligence in hiring and supervising Johnson. The defendants filed a plea in bar in which they asserted that the Act provided the exclusive remedy for the plaintiff's recovery, thereby precluding this action. The defendants also filed an alternative motion to limit the amount of any verdict that might be recovered against them to one million dollars, the maximum amount permitted under the medical malpractice cap.

The Honorable Johanna L. Fitzpatrick, then a circuit judge, considered evidence and argument on both pretrial matters and overruled the defendants' plea in bar. Although she deferred the final ruling on the defendants' malpractice claim to the judge who

---

[4] Believing that Dr. Johnson was employed by Mobil Administrative Services Company, Inc. (MASCI) at the time of his allegedly negligent treatment of Taylor, the plaintiff named MASCI as a defendant with Dr. Johnson. Later discovery revealed that Dr. Johnson was employed by Mobil Administrative Services Company (MASCO), a division of Mobil. Without objection by the defendants, the plaintiff filed an amended motion for judgment naming Dr. Johnson and his employer, Mobil, as defendants.

later would try the case, Judge Fitzpatrick made "binding" findings of fact on that issue. As pertinent, they were that: (1) "Dr. Johnson's failure to renew his license was inadvertent"; (2) the license "lapsed as a result of bureaucratic snafus"; (3) "Dr. Johnson was either licensed or was qualified to be licensed during the period of time in question"; and (4) he immediately renewed his license upon discovering that he was unlicensed.

Later, following a five-day trial, a jury returned a verdict of four million dollars against both defendants[5] and distributed the award as follows: $3,911,750 to Taylor's widow, $75,000 to his daughter, Judith Creagh, and $13,250 to his personal representative for hospital, medical, and funeral expenses. The jury also awarded interest from the date of the verdict.

The court overruled all but one of the defendants' post-trial motions. The court sustained defendants' motion to limit the amount of the recovery to one million dollars, the medical malpractice cap established by Code § 8.01-581.15. Accordingly, in its final judgment, the court (1) reduced the principal amount of the verdict from four million dollars to one million dollars, and (2) directed that interest accrue from the date of the judgment and not from the date of the verdict, as fixed by the jury. The plaintiff appeals both rulings.

The defendants appeal the court's action in (1) granting two particular jury instructions and in (2) denying its pre-trial and post-trial motions to dismiss this action as barred by the Act. We will consider the latter issue first since it raises the question of the circuit court's subject matter jurisdiction.

## I. WORKERS' COMPENSATION ACT

The resolution of this question turns on whether Taylor's death is covered by the provisions of the Virginia Workers' Compensation Act. If Taylor's death gave rise to a claim covered by the Act, this action at law is barred by former Code § 65.1-40, now Code § 65.2-307, which excludes all other rights and remedies of the personal representative.

Taylor's death gives rise to a covered claim if it was the result of (1) an "injury," (2) by "accident," (3) "arising out of [his employment]," and (4) "in the course of [his] employment." Code § 65.2-300; *Snead v. Harbaugh*, 241 Va. 524, 526, 404 S.E.2d

---

[5] Mobil's liability was premised on the doctrine of *respondeat superior*.

53, 54 (1991). A failure to establish any one of the foregoing requirements defeats coverage under the Act. *Snead*, 241 Va. at 526, 404 S.E.2d at 54.

■ As the defendants note, in order for Taylor's death to arise out of his employment, "the origin or cause of the injury" must be a risk connected with the employment. That risk must be an "actual risk" of employment, not merely the risk of being injured while at work. *County of Chesterfield v. Johnson*, 237 Va. 180, 185, 376 S.E.2d 73, 75-76 (1989) (rejecting the "positional risk" test to determine compensability). "[T]he arising out of test excludes 'an injury which comes from a hazard to which the employee would have been equally exposed apart from the employment.' " *Id.* at 183, 376 S.E.2d at 75 (quoting *United Parcel Service v. Fetterman*, 230 Va. 257, 258, 336 S.E.2d 892, 893 (1985)).

Although Taylor's use of the Mobil clinic may have been more convenient for Taylor and Mobil, the evidence discloses that Taylor was not required by Mobil to use the clinic. Nor did the evidence indicate that Mobil expected Taylor to use its facility, as in the defendants' cited case of *Kim v. Sportswear*, 10 Va. App. 460, 467, 393 S.E.2d 418, 422 (1990) (attendance at social event expected by employer).

■ Further, Taylor's heart condition had no connection with his employment. Taylor's consultation with any cardiologist might have exposed him to the same hazards of negligence that he confronted when he consulted Dr. Johnson. Given these circumstances, we conclude that Taylor's exposure to the risk of Dr. Johnson's negligent treatment was not an actual risk of Taylor's employment. Hence, Taylor's death did not arise out of his employment and the plaintiff's claim is not covered by the Act.

Since the defendants failed to establish that Taylor's death arose out of his employment, we do not consider the defendants' contention that the other requirements for coverage were met. Accordingly, we will affirm the judgment of the trial court in denying the defendants' plea in bar.

## II. MEDICAL MALPRACTICE CAP

Next, we consider whether the defendants are entitled to the

benefit of the statute imposing a medical malpractice cap.[6] Our resolution of this issue is controlled by the pertinent portions of the following statutes:

> In any verdict returned against a *health care provider* in an action for *malpractice* . . . which is tried by a jury . . . the total amount recoverable for any injury to, or death of, a patient shall not exceed one million dollars.
>
> In interpreting this section, the definitions found in § 8.01-581.1 shall be applicable.

Code § 8.01-581.15. (Emphasis added.) As pertinent, Code § 8.01-581.1 provides:

> "*Health care provider*" means (i) a person . . . licensed by this Commonwealth to provide health care or professional services as a physician.
>
> "*Malpractice*" means any tort based on health care or professional services rendered . . . by a health care provider, to a patient.
>
> "*Physician*" means a person licensed to practice medicine . . . in this Commonwealth.

■ The defendants admit that Dr. Johnson was not licensed by the Commonwealth when this cause of action arose during his treatment of Taylor in January and February 1991. Nevertheless, they contend that they are entitled to the benefit of the medical malpractice cap because, under the plain language of Code § 8.01-581.15, Dr. Johnson's licensure by the Commonwealth at the time of the verdict entitled them to the medical malpractice cap. According to the defendants, Code § 8.01-581.15 "is keyed to *the return of the verdict* against the health care provider." We agree that the plain language of the statute controls here, but we disagree with the defendants' application of the statute.

---

[6] Without objection, the jury was instructed that Mobil was responsible for any malpractice of Dr. Johnson causing Taylor's death and entitled to any defense available to Dr. Johnson. Therefore, under the law of this case, Mobil's claim of entitlement to the benefit of the medical malpractice cap stands or falls with the same claim made by Dr. Johnson.

The defendants overlook the predicate for the medical malpractice cap. The verdict must be returned "in an action for malpractice." As we have noted, "[m]alpractice" is specifically defined as "any tort based on health care . . . rendered . . . by a health care provider, to a patient." Code § 8.01-581.1. Since Dr. Johnson was not licensed in the Commonwealth when he rendered the services to Taylor, he was not a health care provider within the purview of the statute. Therefore, the plaintiff's action was not one for medical malpractice under the statute; instead, it was a discrete action for negligence or malpractice independent of the statute. And, we conclude that Dr. Johnson's after-the-fact licensure did not convert the plaintiff's action into an action for malpractice under the statute. Hence, we find no merit in this argument.

The defendants point out that Dr. Johnson's temporary lapse of licensure was inadvertent, that he was "licensable," and that he subsequently renewed his license when he discovered that it had lapsed. The defendants further note that the medical malpractice act was enacted as a response to the medical malpractice insurance crisis, not as an act to ensure that health care providers are licensed at all times. The defendants conclude that to deprive Dr. Johnson of the protection of the malpractice act "would be to adopt a formalistic *construction* of the [medical malpractice] Act fundamentally at odds with its purpose." (Emphasis added.)

█ However, we do not think that a denial of the medical malpractice cap to a temporarily unlicensed physician is fundamentally at odds with its purpose of assuring that licensed health care providers will be able to secure malpractice insurance. Further, "[i]t is well-settled that '[w]hen a statute is clear and unambiguous, its plain meaning must be accepted without resort to . . . rules of construction.'" *Gonzalez v. Fairfax Hospital System, Inc.*, 239 Va. 307, 310, 389 S.E.2d 458, 459 (1990) (quoting *Compton v. Commonwealth*, 239 Va. 312, 314, 389 S.E.2d 460, 461 (1990)). The pertinent provisions of the medical malpractice act are plainly written and contain no language authorizing an exception for a physician in Dr. Johnson's circumstances. If an exception should be provided for a physician in Dr. Johnson's circumstances, it must be provided by the legislature. *See Perkins v. Carr*, 227 Va. 16, 20, 313 S.E.2d 372, 374 (1984); *King v. Eccles*, 209 Va. 726, 729, 167 S.E.2d 349, 351 (1969) (unambiguous right-of-way statute cannot be construed to provide exception for favoring more important road over less important road). For these

reasons, we conclude the trial court erred in its application of the medical malpractice cap to the verdict.

## III. "DEADMAN'S STATUTE"

Finally, we consider the defendants' contention that the trial court erroneously submitted the issue of corroboration to the jury in the following instruction:

> You are instructed that you cannot return a verdict in favor of Dr. Johnson based upon his uncorroborated testimony. Corroboration is testimony or evidence that tends to confirm or strengthen the testimony of Dr. Johnson, that is, evidence or testimony that tends to show the truth or probability of the truth of Dr. Johnson's testimony. Such corroboration may be furnished by surrounding circumstances adequately established. If you find that Dr. Johnson's testimony as to his conversations with Harry Taylor lack such corroboration, then you cannot return a verdict for Dr. Johnson based on that testimony.

> If you find that there is more than a scintilla of evidence which tends to confirm or strengthen the testimony of Dr. Johnson regarding any statements made by Harry O. Taylor, then such evidence is sufficient corroboration of Dr. Johnson's testimony regarding those statements of Mr. Taylor.

> Such corroborating evidence may emanate from other witnesses and surrounding circumstances, and Dr. Johnson's testimony need not be corroborated on all material points regarding statements of Mr. Taylor.

The defendants have no objection to the principles stated in these instructions; rather, they contend that the evidence established the necessary corroboration as a matter of law. We disagree.

Code § 8.01-397 provides that in cases such as this, when one party to a transaction has died prior to trial, "no judgment . . . shall be rendered in favor of an adverse . . . party founded on his uncorroborated testimony." Whether sufficient corroboration exists is usually an issue for the jury. *Brooks v. Worthington*, 206 Va. 352, 357, 143 S.E.2d 841, 845 (1965).

Dr. Johnson testified that Taylor never complained of chest pains at any time he saw Taylor in January and February 1991.

Mrs. Taylor corroborated Dr. Johnson's testimony that Taylor made no complaint of chest pain on January 23 when she testified that her husband told her he had only discussed his mouth sores on that visit. However, there was no direct evidence to corroborate Dr. Johnson's version of the January 31 conversation.

To corroborate Taylor's lack of complaint on February 7, the defendants rely on a nurse's testimony that she heard no complaints during the stress test on February 7. They also rely on an inference to be drawn from the evidence of Taylor's failure to tell his wife, his secretary, and two business associates that he had experienced chest pains during the stress test.

However, given the nurse's possible bias as an employee of Mobil and the apparent conflict between her testimony and the results of the stress test, the jury was not required to accept the nurse's testimony. Moreover, the jury may have inferred that Taylor did not report his chest pain during the test because he did not want to alarm his wife and his business associates or prejudice his position with Mobil Oil. Furthermore, while the jury might have considered this evidence as corroboration of Dr. Johnson's testimony that Taylor had made no complaints of chest pain on his January 31 visit, it was not required to do so. It is well established that the determination of the credibility of witnesses and the inferences to be drawn from the evidence are within the province of the jury. *Virginia and Maryland R.R. Co. v. White*, 228 Va. 140, 145, 319 S.E.2d 755, 758 (1984). Thus, we conclude that the issue of corroboration was correctly submitted to the jury.

In summary, we will (1) affirm the judgment of the trial court denying the plea in bar and entering judgment on the jury's finding of liability; (2) reverse the judgment insofar as it reduced the verdict to one million dollars; and (3) reinstate the original jury verdict in favor of the plaintiff for four million dollars with interest from the date of the verdict.[7]

*Affirmed in part,*
*reversed in part,*
*and final judgment.*

---

[7] Although the jury awarded interest from the date of the verdict, the trial court awarded interest only from the date of judgment, so as not to exceed the one million dollar malpractice cap. Since we have held that the recovery in this case is not subject to the medical malpractice cap, we do not decide whether the trial court was correct in this ruling.