Present: Carrico, C.J., Compton, Lacy, Hassell, Keenan, and
Koontz, JJ., and Poff, Senior Justice

DAVID T. SCHWARTZ, M.D., ET AL.

                                    OPINION BY
v.   Record No. 960395      CHIEF JUSTICE HARRY L. CARRICO
                                 February 28, 1997

WILLIAM BROWNLEE

FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
Alfred D. Swersky, Judge

In this medical malpractice case, William Brownlee
(Brownlee) was diagnosed as suffering from prostate cancer, and
David T. Schwartz, M.D. (Dr. Schwartz), removed Brownlee's
prostate gland in an operation which resulted in the successful
excision of the cancer. Following this type of surgery, a
patient normally suffers temporarily from incontinence, but
Brownlee encountered serious difficulties during his post-
operative treatment by Dr. Schwartz and became totally
incontinent.[1]

In an amended motion for judgment filed below, Brownlee
sought damages from Dr. Schwartz, a licensed health care
provider, and his wholly owned corporation, Metropolitan Medical
Care, Inc. (MMC), a non-health care provider (the defendants).
Brownlee alleged that he had sustained injuries as a result of
Dr. Schwartz's post-operative negligence while acting as the
agent of MMC.

---

[1]Both sides to this controversy recognize that a small
percentage of prostatic surgery patients may suffer total
incontinence despite the absence of negligence on the part of the
physician in performing the surgery. Brownlee claims here,
however, that his total incontinence resulted from the post-
operative negligence of Dr. Schwartz and not as an incident of
the surgery.

In a trial before a jury, the trial court ruled as a matter of law that Dr. Schwartz was the agent of MMC "during the relevant times" and instructed the jury accordingly. The jury returned a verdict in favor of Brownlee against Dr. Schwartz and MMC jointly and severally in the sum of $1,850,000.

The trial court ordered a remittitur of the verdict against Dr. Schwartz to $1 million, the medical malpractice cap established by Code § 8.01-581.15. However, the court refused to order a remittitur in favor of MMC and entered judgment against it in the full amount of the verdict.

The defendants filed a petition for appeal, which this Court refused. Later, this Court granted the defendants' petition for rehearing and awarded them this appeal.

In their petition for appeal, the defendants assigned three errors, the first alleging that Brownlee had "failed to prove a proximate cause relationship between the negligence alleged and his injury to a reasonable degree of medical certainty or probability." The gist of the defendants' argument on this point is that Brownlee's counsel failed to incorporate the phrase "reasonable degree of medical certainty" or "reasonable degree of medical probability" into the questions posed to Brownlee's expert witnesses.

However, in their petition for rehearing, the defendants made no mention of their first assignment of error or of any deficiency in the proof of causation, relying solely on the two remaining assignments of error in requesting that "this Court grant the Petition for Rehearing and grant a writ in this case."

In our opinion, the failure to include the first assignment of error in the petition for rehearing constitutes an abandonment of that assignment of error.  We will consider, therefore, only the two remaining assignments of error.  They are as follows:

> 2.  The trial court erred when it denied defendant MMC's Motion to Dismiss as to it as a matter of law and instead directed a verdict for the plaintiff on the issue of whether Dr. Schwartz's performance of medical services was as an agent of MMC.
>
> 3.  The trial court erred when it allowed a judgment in excess of the Virginia Medical Malpractice Cap to stand as to MMC, Dr. Schwartz's wholly owned corporation.
>
>> a.   MMC's liability, which was predicated wholly on a theory of respondeat superior[,] cannot be greater than that of Dr. Schwartz, MMC's alleged agent.
>>
>> b.   Plaintiff is limited to the malpractice cap for damages arising from a single indivisible injury, even when there are multiple defendants jointly and severally liable for same, where at least one of the defendants is a "health care provider" as defined in the Virginia Code.
>>
>> c.   The trial court[']s refusal to remit as to MMC violates the mandate of Va. Code § 8.01-581.15.

<u>Agency</u>.

The defendants argue that there was a conflict in the evidence concerning the agency question and, therefore, that the question should have been submitted to the jury for decision. The defendants' position is stated succinctly in their reply brief, as follows:

> Dr. Schwartz and MMC maintained [that] Dr. Schwartz was not acting as MMC's agent at the time he rendered services to Brownlee. . . .   There was admittedly

significant evidence to the contrary.  This issue
should have been submitted to the jury.



    However, while there may have been a conflict in the
positions taken by the parties with respect to the agency
question, there was no conflict in the facts with respect to that
question.  When "[t]here is no substantial conflict in the facts
and circumstances disclosed by the evidence," it becomes "a
question of law to be decided by the court whether [one party]
was the agent of [another]."  Creech v. Massachusetts Bonding
Co., 160 Va. 567, 576, 169 S.E. 545, 548 (1933).

    Here, the following facts were undisputed.  Dr. Schwartz was
MMC's president and sole shareholder.[2]  MMC leased from landlords
and paid the rent on and otherwise managed the three offices Dr.
Schwartz occupied in his medical practice.  MMC billed Dr.
Schwartz's patients for services rendered and collected his fees
for those services.  All the income Dr. Schwartz earned from his
medical practice was assigned to MMC.  The only income Dr.
Schwartz received was in the form of rent paid to him by MMC for
one of the offices he occupied in his practice.  MMC paid all the
expenses of Dr. Schwartz's practice, including the cost of
advertisements "designed to solicit patients for [his] medical

_____

    [2]MMC is an S corporation chartered in Delaware.  "An S
corporation is a small business corporation for which an election
under Subchapter S of the Internal Revenue Code . . . is in
effect.  I.R.C. § 136(a)(1)."  Durando v. United States, 70 F.3d
548, 549 n.2 (9th Cir. 1995).  An S corporation gives a small
business the advantage of providing limited liability for
shareholders without the disadvantage of corporate taxation.  Id.
at 551.

practice" as well as the cost of his medical supplies, automobile, legal work, licensing, continuing education, and membership in professional associations.  MMC deducted all these expenses on its tax returns.

The defendants cite <u>Hadeed v. Medic-24, Ltd.</u>, 237 Va. 277, 288, 377 S.E.2d 589, 594-95 (1989), for the proposition that in the context of medical malpractice, the crucial factor for determining whether a physician is the agent of another is the power of control.  The defendants then argue that MMC did not control Dr. Schwartz, he controlled MMC.  Therefore, the defendants conclude, it was for the jury to say whether Dr. Schwartz was the agent of MMC, acting within the scope of the agency at the time he rendered post-operative treatment to Brownlee.

We disagree with the defendants.  As the defendants themselves point out, it is the <u>power</u> of control that is crucial to the determination whether an agency relationship existed between Dr. Schwartz and MMC.  The evidence shows that the extensive authority Dr. Schwartz indisputably granted to MMC over his affairs, including MMC's dominion over the purse strings, clearly vested MMC with the power of control sufficient to support the trial court's finding, as a matter of law, that an agency relationship did exist between Dr. Schwartz and MMC at the time Dr. Schwartz rendered post-operative treatment to Brownlee.  Hence, the trial court did not err in its finding.

<u>Remittitur</u>.

The defendants argue that the trial court erred in refusing

to order a remittitur of the verdict against MMC to $1 million, the medical malpractice cap established by Code § 8.01-581.15.

That Code section reads as follows:
> In any verdict returned against a health care provider in an action for malpractice where the act or acts of malpractice occurred on or after October 1, 1983, which is tried by a jury or in any judgment entered against a health care provider in such an action which is tried without a jury, the total amount recoverable for any injury to, or death of, a patient shall not exceed one million dollars.
>
> In interpreting this section, the definitions found in § 8.01-581.1 shall be applicable.

Code § 8.01-581.1 defines the term "health care provider" in pertinent part as
> a person, corporation, facility or institution licensed by this Commonwealth to provide health care or professional services as a physician or hospital, dentist, pharmacist, registered or licensed practical nurse, optometrist, podiatrist, chiropractor, physical therapist, physical therapy assistant, clinical psychologist, [or a] health maintenance organization.

The defendants concede that MMC "did not fall within the definition of health care provider in § 8.01-581.1 effective at the time of Brownlee's injury."[3]  Nevertheless, the defendants say, "because MMC was jointly and severally liable with Dr. Schwartz, a health care provider subject to protection of The Cap, for a single and indivisible injury, . . . Brownlee's total recovery against all defendants is limited to what he is allowed to recover against Dr. Schwartz."

___

[3]A 1994 amendment to Code § 8.01-581.1, effective subsequent to Brownlee's injury, added a definition of "health care provider" to include "a corporation, partnership, limited liability company or any other entity, except a state-operated facility, which employs or engages a licensed health care provider and which primarily renders health care services."

Quoting <u>Bulala v. Boyd</u>, 239 Va. 218, 389 S.E.2d 670 (1990), the defendants say that "'a single limit . . . applie[s] to an indivisible injury to a plaintiff, even though it was caused by the concurring negligence of two or more defendants.'" <u>Id.</u> at 228, 389 S.E.2d at 675. However, unlike the present situation, where one defendant is a health care provider and the other is not, both the defendants in <u>Bulala</u> were health care providers. Therefore, <u>Bulala</u> is inapposite.

Further, quoting <u>Fairfax Hospital System v. Nevitt</u>, 249 Va. 591, 457 S.E.2d 10 (1995), which involved joint tortfeasors, the defendants state that "'in any judgment entered against a health care provider, the quantum of the recovery for a medical malpractice injury cannot exceed the aggregate amount capable of recovery.'" <u>Id.</u> at 598, 457 S.E.2d at 14. The defendants also quote from <u>Nevitt</u> to the effect that it is "'wholly immaterial'" that one of the tortfeasors was not a health care provider. <u>Id.</u> However, <u>Nevitt</u> presented a different issue. That case involved the interplay between Code § 8.01-581.15, which contains the medical malpractice cap, and Code § 8.01-35.1, which provides that the amount recovered against one tortfeasor shall be reduced by the amount paid in settlement by another tortfeasor. The issue in <u>Nevitt</u> was whether the amount paid in settlement by one tortfeasor should be deducted before or after the medical malpractice cap was applied to an excessive verdict against the other tortfeasor. It was in this context, differing substantially from the present situation, that we said it was "wholly immaterial" that the settling tortfeasor was not a health

care provider.

The most analogous case is Taylor v. Mobil Corp., 248 Va. 101, 444 S.E.2d 705 (1994). There, the negligent physician had allowed his license to lapse. Yet, he and his employer, a non-health care provider, both claimed entitlement to the protection of the medical malpractice cap from a $4 million verdict returned against them. The trial court ordered a remittitur of the verdict to $1 million with respect to both defendants. We said that "[s]ince [the physician] was not licensed in the Commonwealth when he rendered the services to [the patient], he was not a health care provider within the purview of the statute," id. at 109, 444 S.E.2d at 709, and we held that "the trial court erred in its application of the medical malpractice cap to the verdict," id. at 110, 444 S.E.2d at 710.

Taylor is clear authority for the proposition that one who is unlicensed as a health care provider in this Commonwealth, whether principal or agent, is not entitled to the protection of the medical malpractice cap. MMC was not licensed as a health care provider in this Commonwealth. Hence, it is not entitled to the protection of the cap.

The defendants argue, however, that "the only theory on which MMC could conceivably have been held liable for any injury to Brownlee is upon the derivative liability arising from the respondeat superior doctrine." Under the common law, the defendants continue, the amount of a judgment against a principal cannot be greater than the amount of the judgment against the agent tortfeasor. Hence, the defendants conclude, the trial

court erred in refusing to order a remittitur of the verdict against MMC to $1 million. We have no quarrel with the defendants' argument that, at common law, the liabilities of principals and agents are coterminous. That view has been recognized in Virginia. In Monumental Motor Tours v. Eaton, 184 Va. 311, 35 S.E.2d 105 (1945), we said that when a master and servant are sued together and the master's liability rests solely upon the servant's negligence, "a verdict which in terms finds for the servant and against the master or is silent as to the servant and finds against the master, is . . . predicated upon a misapprehension of the law." Id. at 314-15, 35 S.E.2d at 106 (quoting Barnes v. Ashworth, 154 Va. 218, 229, 153 S.E. 711, 713 (1930)).

The common law continues in full force in Virginia except as altered by the General Assembly. Code § 1-10. The General Assembly may abrogate the common law, but its intent to do so must be plainly manifested. Wackwitz v. Roy, 244 Va. 60, 65, 418 S.E.2d 861, 864 (1992). "Statutes in derogation of the common law are to be strictly construed and not to be enlarged in their operation by construction beyond their express terms." Blake Construction Co. v. Alley, 233 Va. 31, 34, 353 S.E.2d 724, 726 (1987) (quoting C. & O. Railway Co. v. Kinzer, 206 Va. 175, 181, 142 S.E.2d 514, 518 (1965)).

We are of opinion that in the enactment of Code § 8.01-581.15, the General Assembly has abrogated the common law and that its intent to do so is plainly manifested. By making the medical malpractice cap applicable only to licensed health care

providers and denying the protection of the cap to non-health care providers, the General Assembly has provided in medical malpractice cases an exception to the rule that the liabilities of principals and agents are coterminous.

In the medical malpractice context, the exception is a rule of reason. The General Assembly enacted the medical malpractice cap for the purpose of enabling licensed health care providers to secure medical malpractice insurance at affordable rates. See Etheridge v. Medical Center Hospitals, 237 Va. 87, 93-94, 376 S.E.2d 525, 527-28 (1989). It would not serve that purpose to extend the protection of the cap to non-health care providers, and we will not ascribe to the General Assembly an intent to make such an extension. Rather, as indicated supra, we think it was the legislative intent, clearly manifested, to except such non-health care providers from the protection of the cap.

For the reasons assigned, we will affirm the judgment of the trial court.

Affirmed.