# CIRCUIT COURT OF ARLINGTON COUNTY

Edward P. Jappell et al.

v.

Arlington Health Foundation et al.

December 2, 1998

Law No. 97-9631

BY JUDGE JOANNE F. ALPER

This Court has considered the issues raised in defendants' demurrers to plaintiffs' Second Amended Motion for Judgement including the written memorandum filed by counsel for defendants Arlington Health Foundation, William D. Dolan, Jr., M.D., William D. Dolan, Jr., M.D., Ltd., and Richard N. Palmer, M.D., the memorandum opposing demurrers filed by counsel for the plaintiffs, and the defendants' reply memorandum, together with the oral arguments of November 24, 1998. This letter will set forth the Court's rulings on the various legal issues raised therein.

### Background Facts

Plaintiffs are the personal representatives of the Estate of Bernadette Mary Jappell. Their Second Amended Motion for Judgement contends that their thirteen year old daughter died of AIDS on January 22, 1998. The wrongful death suit alleges that the cause of their daughter's contracting AIDS was one of four blood transfusions she received immediately after birth at Arlington Hospital between April 10 and 17, 1984, in that one unit of blood transfused into the infant contained the HIV virus. Plaintiffs allege that they have been able to identify whom they believe to be the HIV-infected donor and that defendants were all negligent in their screening procedures which allowed the infected donor to give HIV-infected blood at the Arlington Hospital blood

bank in November 1983. Plaintiffs allege that this donor's blood and blood product were stored at Arlington Hospital until Bernadette's birth on April 10, 1984, when she was transfused with HIV contaminated blood products.

Plaintiffs' Second Amended Motion for Judgement contains three counts. Count One alleges negligence by the defendants by not insuring safe blood donation in November 1983 and alleges that the gathering and screening of blood does not involve health care and medical malpractice and accordingly that the action is not covered by the provisions of the Virginia Medical Malpractice Act. Count Two is an alternative count which raises claims against the defendants for medical malpractice.[1]

Defendants have demurred to Count One on the basis that the screening and obtaining of blood products by health care providers is health care under the Virginia Medical Malpractice Act. Defendants have also demurred to the damages claimed in all counts of the Second Amended Motion for Judgment alleging that they exceed damages which are permitted by the Virginia Wrongful Death Statute.

### Demurrer to Count One

Count One of plaintiffs' Second Amended Motion for Judgment alleges that the screening of blood donors and the procurement and storage of blood and blood products is not health care under the Virginia Medical Malpractice Act ("VMMA") and is therefore not subject to the statutory $1,000,000 cap on damages. Defendants' demurrer challenges the legal sufficiency of this count. In order to resolve this issue, it is necessary to carefully analyze the provisions of the VMMA.

The VMMA defines a health care provider as:

a person, corporation, facility or institution licensed by this Commonwealth to provide health care or professional services as a physician or hospital...which primarily renders health care services.

---

[1] Count Three of the Second Amended Motion for Judgment was voluntarily dismissed by the plaintiffs on November 24, 1998, when they sought and received leave to file a Third Amended Motion of Judgment replacing Count Three with a count which derives from Va. Code § 32.1-297, alleging a cause of action for an implied warranty in connection with the processing and sale of blood products.

Va. Code § 8.01-581. Defendants Arlington Hospital, Dr. Dolan, and Dr. Palmer fall squarely within the definition of health care providers under the VMMA.[2]

The VMMA defines "health care" as being:

> any act, or treatment performed or furnished, or which should have been performed to or furnished, by any health care provider for, to or on behalf of a patient during the patient's medical diagnosis, care treatment or confinement.

The Act defines malpractice as:

> any tort based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient.

Moreover, Va. Code § 13.1-543 defines professional services as:

> any type of personal service to the public which requires as a condition precedent to the rendering of such service ... obtaining of a license, certification, or other legal authorization.

Plaintiffs argue that although the defendants were "health care providers" under the VMMA, since the negligence in screening, obtaining, and storing the blood occurred before Bernadette was a "patient", indeed before she was *born*, these acts fall outside of the scope and protection of the VMMA. The plaintiffs emphasize the language in the Act which states that health care must be furnished to or on behalf of patient *"during the patient's medical diagnosis, care, treatment or confinement"* (emphasis added).

It appears that whether the screening, procurement, and storage of blood is health care under the VMMA is an issue of first impression in this

---

[2] Plaintiffs have raised the issue that Dr. Dolan's corporation, William D. Dolan, Jr., M.D., Ltd., which is also a defendant in this action, does not fall within the definition of "health care provider" since the Medical Malpractice Act as it existed at the time that the plaintiffs' decedent received the blood transfusion did not cover professional corporations which employed physicians, citing *Schwartz v. Brownlee*, 253 Va. 159, 452 S.E.2d 827 (1997). This issue will be governed by a decision on when plaintiffs' cause of action arose. That issue has not been addressed formally by counsel or the Court and accordingly will not be addressed by this letter opinion.

Commonwealth. Accordingly, the Court's decision on this issue must be based upon the clear language of the Act together with the case law interpreting the purpose and intent of the Act. Recent cases decided by the Virginia Supreme Court have liberally construed the VMMA to cover virtually every possible relevant act which could be construed to be "health care". In *Gonzalez v. Fairfax Hospital System*, 239 Va. 307, 389 S.E.2d 458 (1990), a plaintiff who injured his toe by a protruding screw in the hospital whirlpool sued the hospital, the administrator, the physician, and the chair of the hospital's physical therapy department. Although plaintiff alleged that the action did not involve health care under the definition of the Act, the Supreme Court disagreed and held that the incident clearly fit under the plain language of the statute.

Similarly, in the case of *Hagen v. Antonio*, 240 Va. 374, 397 S.E.2d 810 (1990), the Supreme Court held that a sexual assault which occurred during a county police department physical examination was a cause of action for malpractice under the VMMA. The Court's decision in the *Hagen* case clearly demonstrated the broad scope which it gave to the statutory definitions of both "health care" and "any tort" under the Act.

This Court cannot ignore the medical and professional qualities of the procedures involved in the collection, screening, and storage of blood, even though it is a technical process and can be done by individuals who might not fall within the Act's definition of "health care providers." In this case, the actions complained of were all done by the Hospital and Drs. Dolan and Palmer in their professional capacity of health care providers. Moreover, it is clear from the nature of blood procurement and screening that those activities were undertaken by Dr. Dolan, Dr. Palmer, and the Hospital on behalf of *all* patients who might someday need a transfusion of blood or blood products, including plaintiffs' decedent, Bernadette Jappell. Blood collection and screening and testing is a professional, medical service and not a non-professional activity performed by these defendants. The defendant doctors ran the blood bank at the defendant Hospital and the Court cannot characterize their activities as non-professional and involving no medical skill or expertise; clearly they are "professional services" as defined by the VMMA.

Plaintiffs' argument rests upon the Act's language that the services be rendered to a patient *during* treatment. The flaw in this argument is the assumption that the screening, procurement, storage, and later administration of blood to Bernadette Jappell took place at a discrete point in time rather than as a continuous series of actions spanning from the time the donor entered the blood bank and lasting until the blood was transfused into the recipient patient's blood stream. The screening, collection, and storage of blood is a

continuous process and except in those circumstances where one donates blood for his own use for a later date for surgery or makes a directed donation specifically for the use of a particular patient, at no time during the screening, collection, and storage of blood by a blood bank is a particular patient identified. If the Court were to accept plaintiffs' argument, then no actions of blood banks, except in those few particularized cases set forth above, would be deemed to fall within the scope of the VMMA, despite the fact that such blood banks are run by health care providers as defined in the Act.

Plaintiffs cite cases from other jurisdictions which have held that negligence in connection with blood donation and screening is not malpractice. The Court has reviewed those cases and believes that they are not persuasive to this decision since they are predicated upon the specific statutes of other states which are not identical to the VMMA.

In view of the clear language of the VMMA, together with the broad interpretation which it has been given by prior decisions of the Virginia Supreme Court, the Court finds that the alleged actions of the defendants in screening, procurement, and storage of blood is both health care and professional services and therefore subject to the provisions of the VMMA. Accordingly, for the reasons set forth herein, the Court holds that the Plaintiffs have not stated a claim for negligence against the defendants as set forth in Count One of the Second Amended Motion for Judgment. The defendants' demurrer to Count One is sustained, and Count One shall be dismissed.

## *Damages Under the Wrongful Death Statute*

Defendants' demurrer also attacks certain elements of the damages claimed by plaintiffs as being beyond the scope of the Virginia Wrongful Death Statute. Specifically, defendants challenge plaintiffs' claim for damages for the suffering, pain, mental anguish, and disfigurement of Bernadette before her death, and plaintiffs' claim for compensation reasonably expected to be earned by Bernadette had she lived.

Va. Code § 8.01-52 defines the amount of damages allowable in an action under Va. Code § 8.01-50, the Wrongful Death Act. This statute allows damages for:

1. Sorrow, mental anguish, and solace which may include society, companionship, comfort, guidance, kindly offices and advice of the decedent;

2. Compensation for reasonably expected loss of (i) income of the decedent and (ii) services, protection, care and assistance provided by the decedent;

3. Expenses for the care, treatment and hospitalization of the decedent incident to the injury resulting in death;

4. Reasonable funeral expenses.

The statute explicitly allows for recovery of hospital and funeral expenses of the decedent, however, it does not mention the decedent's pain and suffering during that hospitalization. Defendants argue that since the statute does not specifically permit damages for the pain and suffering of the decedent, such damages are *not* recoverable. Plaintiffs argue the converse: since the statute does not specifically prohibit those damage, then the damages *are* recoverable. Counsel agree that there is no Virginia Supreme Court decision which addresses this issue under the new version of the Wrongful Death Act, Va. Code § 8.01-50. Counsel for the Defendants argue that the damages contained in the Wrongful Death Act are "beneficiary driven" and that to allow a claim for the pain and suffering of the decedent where the decedent is not available to testify or be cross-examined, would be highly speculative and prejudicial and for those reasons, the exclusion of any mention of pain and suffering of decedent prior to death was deliberate. Plaintiffs' argument is based upon cases decided under the old law where such claims could be brought under the survival act.

Since the survival and wrongful death acts have been amended and merged together there have been no cases from the Supreme Court which hold that pain and suffering of the decedent can properly be raised in a wrongful death action. Moreover, under the rule of statutory construction *expressio unius est exclusio alterius,* mention of one thing in the statute implies the exclusion of another. Accordingly, the fact that the General Assembly included the decedent's hospital and funeral expenses among the damages permitted under the Wrongful Death Act and made no mention of the decedent's pain and suffering during such hospitalization implies that such omission was intentional. Accordingly, the Court will sustain the demurrer to plaintiffs' claim for damages for the decedent's pain and suffering prior to her death and the claim for those damages will be stricken.

Defendants have also demurred to plaintiffs' claim for recovery of the decedent's future income on the basis that since she was only thirteen at the time of her death, any damages recoverable would be purely speculative. As stated in Court, this issue is premature since the issue of whether such damages are recoverable is dependent upon evidence which may be presented by the

plaintiffs at trial. Therefore, in accordance with the oral ruling on November 24, the demurrer to this item of damages will be overruled, subject to appropriate motions at the conclusion of plaintiffs' evidence at trial.