COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Chief Judge Felton, Judges Alston and McCullough
Argued at Alexandria, Virginia


MADIHA GOBASHI

v.         Record No. 0446-12-4

FAIRFAX COUNTY PUBLIC SCHOOLS

MEMORANDUM OPINION[*] BY
CHIEF JUDGE WALTER S. FELTON, JR.
DECEMBER 4, 2012

FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

Andrew S. Kasmer for appellant.

Natalie Cantor Gros (Michael N. Salveson; Littler Mendelson, P.C.,
on brief), for appellee.


Madiha Gobashi ("claimant") appeals a decision of the Workers' Compensation

Commission ("commission"), reversing a deputy commissioner's award of temporary total

disability benefits and medical benefits.  Claimant sustained a right knee injury while employed

by Fairfax County Public Schools ("employer") on March 26, 2010.  She contends that the

commission erred in holding that her injury did not arise out of her employment as required by

Code § 65.2-101, erred in holding that she provided no specific details of her act of "rushing,"

erred by failing to adopt the factual findings of the deputy commissioner, erred in finding that the

situation that led to her injury did not constitute an emergency, and erred in holding that her

rushing to a classroom to watch an autistic child did not constitute a risk of her employment.  For

the following reasons, we affirm the commission.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

## I. BACKGROUND

"We view the evidence on appeal in the light most favorable to [employer], the prevailing party before the commission." Dunnavant v. Newman Tire Co., 51 Va. App. 252, 255, 656 S.E.2d 431, 433 (2008).

Claimant was employed as a physical health attendant for employer at an elementary school beginning on November 23, 2009. On March 26, 2010, after she assisted a special needs student in using the bathroom, and in an effort to be on time to her next assignment, she stated she "walk[ed] in a rush" through the school lobby and felt a "pop[]" in her right knee. Claimant's testimony at the deputy commissioner's hearing was that she was trying to get to Linda Crittenden's first grade classroom to be with an autistic boy whom claimant stated should not be alone in that classroom. When she arrived in the classroom, claimant told Ms. Crittenden that she hurt her right knee while "rushing" to the classroom. Following the incident, claimant was initially treated by Dr. L. Sam Wilson, Jr., an orthopedist. Over the next seven months, she continued treatment for her injured right knee with various other physicians. She was diagnosed with "[r]ight knee pain and right knee severe degenerative arthritis."[1]

The deputy commissioner found that claimant's right knee injury arose out of the course of her employment. He concluded that claimant's employment required her to "rush" to the classroom so that Ms. Crittenden would not be alone in the classroom with the autistic boy and his classmates.

Employer appealed to the full commission, asserting that claimant's "walking quickly or rushing" to a classroom was not an actual risk of her employment and that the record before the commission demonstrated that, other than claimant's assessment that she needed to hurry to Ms. Crittenden's classroom, "there was no emergency that required her to rush" to get there.

---

[1] Claimant was scheduled for total right knee replacement surgery in January 2011.

On review, the full commission reversed the deputy commissioner's award to claimant of temporary total disability compensation and medical benefits. In concluding that claimant's knee injury did not arise out of her employment, the commission stated:

> In the instant case, the claimant's action of rushing to be with the autistic boy who could not be left alone after she was delayed taking another student to the restroom was not sufficiently strenuous for it to be an activity to which the general public is not routinely exposed. The claimant did not provide any specific details about her act of "rushing." It is not clear if she was walking quickly, running, or jogging. We appreciate that she was worried about the autistic boy, but her testimony is that the boy could not be left alone. Therefore, she had no reason to believe he was alone. She may have been late to relieve whoever was with the boy, but it was not an emergency. It is reasonable to believe that, while her employment required that she meet a schedule, circumstances arise that affect the schedule. These expected circumstances are not sufficient to constitute a risk of the employment.

Commissioner Diamond dissented, asserting that claimant's rushing was work-related because "based on the credibility findings of the Deputy Commissioner, the claimant had a work-related need to rush because for safety reasons it was insufficiently safe to have only one adult supervising both the autistic child and the other special education students."

## II. ANALYSIS

### A. Standard of Review

On appeal, claimant asserts that the commission erred by holding her injury did not arise out of her employment. "The commission's decision that an accident arises out of the employment is a mixed question of law and fact and is therefore reviewable on appeal. By statute, the commission's factual findings are conclusive and binding on this Court when those findings are based on credible evidence." City of Waynesboro v. Griffin, 51 Va. App. 308, 312, 657 S.E.2d 782, 784 (2008) (citation omitted).

In assessing whether an injury arises out of employment, Virginia follows the "actual risk" doctrine which "excludes 'an injury which comes from a hazard to which the employee would have been equally exposed apart from the employment.'" Taylor v. Mobil Corp., 248 Va. 101, 107, 444 S.E.2d 705, 708 (1994) (quoting Cnty. of Chesterfield v. Johnson, 237 Va. 180, 183, 376 S.E.2d 73, 75 (1989)). An "'actual risk' of employment" is "not merely the risk of being injured while at work." Id. "This requirement can only be met 'if there is a causal connection between the claimant's injury and the conditions under which the employer requires the work to be performed.'" Griffin, 51 Va. App. at 313-14, 657 S.E.2d at 784 (quoting R & T Investments v. Johns, 228 Va. 249, 252, 321 S.E.2d 287, 289 (1984)). "Simple acts of walking, bending, or turning, without any other contributing environmental factors, are not risks of employment." Southside Virginia Training Ctr. v. Ellis, 33 Va. App. 824, 829, 537 S.E.2d 35, 37 (2000).

In its role as the finder of fact, "the [c]ommission resolves all conflicts in the evidence and determines the weight to be accorded the various evidentiary submissions." Bass v. City of Richmond Police Dep't, 258 Va. 103, 114, 515 S.E.2d 557, 563 (1999). "'[I]t is our duty to determine whether credible evidence supports the [c]ommission's finding . . . and, if such evidence exists, to sustain the finding.'" Celanese Fibers Co. v. Johnson, 229 Va. 117, 121, 326 S.E.2d 687, 690 (1985) (first and third alterations in original) (quoting Cook v. City of Waynesboro, 225 Va. 23, 31, 300 S.E.2d 746, 750 (1983) (citations omitted)). From the record on appeal, we conclude that the commission did not err in finding that claimant's injury did not arise out of her employment.

B. Actual Risk of Employment

Claimant asserts that the commission erred in finding that claimant's rushing to be with the autistic student in Ms. Crittenden's classroom did not qualify as an emergency and that it erred in finding her act of rushing to get to a classroom to be with the student was not "sufficiently strenuous" to constitute an actual risk of her employment. Claimant's Br. at 3. While the record shows that her injury occurred during her employment, it does not establish that her injury arose out of her employment as required by the Workers' Compensation Act.

In concluding that claimant's injury was not an actual risk of her employment, the commission relied on its holding in Yowell v. Heritage Hall, 05 WC UNP 2185153, No. 218-51-53 (Sept. 7, 2005). In Yowell, the commission held that "walking along a clean, unobstructed hallway at a faster-than-normal pace was insufficient to establish that the injury arose out of the employment." Id. This Court, however, has previously held that an injury sustained from rushing *in an emergency situation* was compensable. In Heritage Hall v. Crabtree, 46 Va. App. 750, 754, 621 S.E.2d 694, 696 (2005), the Court found that a nursing home aide's injuries were compensable as the record in that case established that Crabtree's "knee popped when she went to stop while rushing to prevent a[n elderly] resident from exiting the facility and to turn off the alarm." We concluded in that case that Crabtree's "risk of injury was 'peculiar to [her] job and not one to which the general public is equally exposed.'" Id. (alteration in original) (quoting Vint v. Alleghany Reg'l Hosp., 32 Va. App. 60, 65, 526 S.E.2d 295, 297 (2000)).

The record before us established that claimant was en route to Ms. Crittenden's classroom to be with an autistic student after assisting another special needs child in the bathroom. Ms. Crittenden testified that claimant frequently had to assist the other child in the restroom leaving her as the sole adult in the classroom with the children. Ms. Crittenden stated

that there were "periods of time . . . everyday" that she was alone with all of the students. In fact, she testified that if claimant was not in her classroom she "knew that [claimant] was taking care of something else . . . that had to be done." Nothing in the record suggests that an emergency situation was created on this particular day by claimant's being delayed for a few minutes from being with the autistic student in Ms. Crittenden's classroom. We do not doubt that claimant was a conscientious employee who took great care in the discharge of her duties as a physical health attendant. However, the record before us does not establish that she was required by the terms of her employment to rush to Ms. Crittenden's classroom at the time her knee popped.

We conclude that the commission did not err in finding that the right knee injury claimant incurred as she hurried to Ms. Crittenden's classroom did not arise out of her employment within the meaning of the Workers' Compensation Act. Claimant's walking briskly or otherwise moving in haste to get to Ms. Crittenden's classroom did not constitute an actual risk of claimant's employment, nor was there any emergency requiring her to rush to Ms. Crittenden's classroom. Accordingly, we affirm the commission's holding that claimant's injury resulting from her rushing to get to Ms. Crittenden's classroom did not arise out of her employment.[2]

---

[2] Claimant's remaining two assignments of error are assertions that the commission erred in "failing to honor the factual findings of the deputy commissioner." Claimant's Br. at 4. We find no merit to either of these assignments of error.

First, claimant asserts that the commission erred by finding that she failed to provide "any specific details about her act of 'rushing.'" Id. Claimant testified that she "walk[ed] in a rush" in the hallway. She also testified that she "wouldn't run" and that she was "almost running." Claimant's medical records from various physicians are also unclear as to how she proceeded to Ms. Crittenden's classroom. The three medical records note that claimant injured her right knee when "running," "walking quickly," and "running on the playground" respectively. During her recorded interview with the insurance adjuster, claimant stated she "walk[ed] in a rush" and "I, I walk, I walk . . . but I . . . I have to rush." Because there are no specific details in the record regarding claimant's act of rushing, we conclude that the commission did not err in finding claimant failed to provide specific details about her act of rushing.

## III.  CONCLUSION

For the foregoing reasons, we affirm the decision of the commission reversing the deputy commissioner's award of temporary total disability benefits and medical benefits to claimant.

<u>Affirmed.</u>

---

Claimant also asserts that the commission erred in "failing to honor the factual findings of the deputy commissioner finding that the claimant's action was that she was walking quickly, running, or jogging."  Claimant's Br. at 4.  In support of this assignment of error, claimant contends on brief that the commission had no basis to reverse the deputy commissioner's finding of her credibility.  Our review of the record on appeal fails to disclose any finding by the commission that claimant was not credible.  Stated simply, claimant complains of an error that the commission did not make.

Alston, J., dissenting.

I respectfully dissent from the holding of my colleagues in the majority. Because I would hold that in these unique circumstances, claimant's "rushing" to Ms. Crittenden's classroom to meet her professional obligations constituted an actual risk of claimant's employment, I would reverse and remand to the commission for further proceedings.

As the majority correctly notes, Virginia adheres to the actual risk doctrine to determine whether an injury arises out of employment. Taylor v. Mobil Corp., 248 Va. 101, 107, 444 S.E.2d 705, 708 (1994). The actual risk doctrine is satisfied "'if there is a causal connection between the claimant's injury and the conditions under which the employer requires the work to be performed.'" City of Waynesboro v. Griffin, 51 Va. App. 308, 313-14, 657 S.E.2d 782, 784 (2008) (quoting R&T Invs. v. Johns, 228 Va. 249, 252, 321 S.E.2d 287, 289 (1984)).

Simply put, I believe that the record in the instant case demonstrates a causal connection between claimant's injury and the conditions under which employer required her to perform her work. In my view, the key to the analysis is that claimant's employment required her to assist two students with disabilities. On the date of her injury, claimant first assisted one student in class and then escorted that student to the bathroom, as her job required. As a result of her completion of these duties, claimant was then "behind schedule" in reaching Ms. Crittenden's classroom to assist the second student. This scheduling was what caused claimant's circumstances and her need to "rush" to Ms. Crittenden's classroom. While it is true that employer did not *explicitly* require claimant to "rush" from one area of the school to the other, claimant's scheduling requirements were such that she was to be in one place at one time and another place a very short time later. Thus, in my view, employer effectively required that claimant move quickly from one place in the school to another in order to be on time. Claimant's schedule and duties necessarily required her to efficiently and expeditiously get from

one area of the school to another.  As a result, I would hold that claimant's injury was causally connected to a condition under which employer required her work to be performed.

To hold otherwise results in a logical anomaly.  For example, under the majority's reasoning, an employee who injures her back while lifting boxes would not suffer an injury arising out of her employment should the employer simply tell her that boxes currently on the floor must be on the top of a shelf by the end of the day, without *explicitly* instructing her to lift the boxes.  Just as that employee lifts the boxes to fulfill the employer's requirements and so her injury arises out of her employment, so too did claimant in the case at bar rush from one place in the school to another to fulfill her work duties.

Obviously, "[s]imple acts of walking, bending, or turning, without any other contributing environmental factors, are not risks of employment."  Southside Va. Training Ctr. v. Ellis, 33 Va. App. 824, 829, 537 S.E.2d 35, 37 (2000).  However, claimant was not simply walking.  The commission found as a matter of fact that claimant was "rushing."

Furthermore, I do not agree with the majority that an "emergency" is required before the act of rushing, hurrying, or moving at a faster-than-normal pace can establish that an injury arises out of employment.  First, in unpublished cases of this Court, we have found that acts of "rushing" or "hurrying" arise out of employment even in the clear absence of an emergency.[3] See Hampton Holiday Inn v. Pearson, No. 2978-07-1, 2008 Va. App. LEXIS 299, at *5 (Va. Ct. App. June 24, 2008) (holding that the claimant's injury arose out of her employment when she was injured while stepping from the interior of the employer's hotel onto rough concrete while "hurrying in order to serve one of [the] employer's customers and avoid leaving [the] employer's new employee alone at the front desk"); Checkered Flag Motor Car Co. v.

---

[3] I recognize that under Rule 5A:1(f), unpublished cases may be cited "as informative" but they "shall not be received as binding authority."  I find the cited cases informative in the case at bar.

- 9 -

<u>Chettiar</u>, No. 1290-99-1, 1999 Va. App. LEXIS 565, at *3 (Va. Ct. App. Oct. 5, 1999) (holding that the claimant's injury arose out of his employment when he was injured when he tripped and fell down stairs because he was "rushing to reach the customer first" as part of the employer's "game"); <u>Food Lion, Inc. v. Betts</u>, No. 1105-97-1, 1997 Va. App. LEXIS 583, at *2 (Va. Ct. App. Sept. 9, 1997) (holding that the claimant's injury arose out of his employment when he was injured while "jogging to the freezer area" for no identified reason and he slipped on condensation and fell).

Second, while a very serious situation did arise in <u>Heritage Hall v. Crabtree</u>, 46 Va. App. 750, 621 S.E.2d 694 (2005), in my view the analysis in that case did not turn on the existence of an "emergency." Indeed, nowhere in <u>Crabtree</u> did the Court describe the circumstances that arose in that case as an "emergency." Rather, the Court stated,

> The protection of residents *was a condition of the nursing home*. The worker's response of hurrying to the aid of a patient and to cut off the alarm *benefited her employer*. It was a reaction reasonably to be expected of an employee of that workplace when faced with an alarm set off by a patient. Her conduct in trying to protect the resident was "reasonably incidental" to her duties as an employee of a nursing home. The purpose of an alarm is to alert and warn of potential danger. The worker's knee popped when she went to stop while rushing to prevent a resident from exiting the facility and to turn off the alarm.

<u>Crabtree</u>, 46 Va. App. at 754, 621 S.E.2d at 696 (emphasis added). Similarly, in the instant case, claimant's actions benefitted employer and were reasonably to be expected of an employee of that particular workplace when faced with a schedule that required her to be in one place at one time and another place very shortly thereafter.

Finally, working with children, especially in the field of special education, has a myriad of specific considerations that must be addressed on a day-to-day basis. Because of all of the additional stresses faced by working with children in special education, the challenges associated with the work are heightened, and what may seem a rather simple task, returning to the class

- 10 -

environment as expeditiously as possible, becomes even more critical in a special education class environment.

Because I believe the record demonstrates that claimant's actions were causally connected to the conditions of her employment, I submit that the requirement of proving an "emergency" before an act of rushing or hurrying may be compensable is unnecessary. I would hold that claimant's injury satisfied the actual risk test and arose out of her employment. Therefore, I respectfully dissent.