# BOARD OF SUPERVISORS OF FAIRFAX COUNTY, VIRGINIA

v.

# LAKE SERVICES, INCORPORATED

Record No. 921892

February 25, 1994

Present: All the Justice

*James V. McGettrick, Assistant County Attorney (David P. Bobzien, County Attorney, on briefs), for appellant.*

*Francis J. Prior, Jr. (Siciliano, Ellis, Dyer & Boccarosse, on brief), for appellee.*

JUSTICE KEENAN delivered the opinion of the Court.

The sole issue in this appeal is whether the Board of Supervisors of Fairfax County (the Board) is required to produce expert testimony establishing a standard of care in a negligence action for damages that occurred in the course of a dredging operation.

Because the trial court sustained a motion to strike the Board's evidence, we view the evidence in the light most favorable to the Board. *Brill v. Safeway Stores, Inc.,* 227 Va. 246, 247, 315 S.E.2d 214, 215 (1984). The Board filed an amended motion for judgment against Lake Services, Incorporated, seeking recovery for damage to an underwater sanitary sewer pipe. The damage allegedly resulted from Lake Services' negligence in operating a barge during a dredging project. Lake Services had contracted with the Reston Home Owners' Association (RHOA) to dredge portions of Lake Thoreau, a private, artificial lake, which was owned by RHOA on the date of the accident.

The evidence shows that this type of dredging work entails the use of a floating construction crane, which removes material from a lake bed and deposits it on a barge. A boat then pushes the loaded barge to a staging area for unloading.

Larry Butler, one of RHOA's managers, testified that, in early July 1987, he gave Gary Jackson, Lake Services' foreman on the project, a map showing the location of the County's sewer line in the West Cove area of Lake Thoreau. The map noted that the pipe was "5.5' down."

Butler explained to Jackson that the notation "5.5' down" meant that the sewer pipe was submerged 5.5 feet below "normal pool elevation." Butler further explained that the term "normal pool elevation"

referred to the elevation of the lake surface when it was full of water. Finally, Butler informed Jackson that Lake Thoreau's pool elevation was approximately four inches below normal at that time.

Lake Services conducted dredging operations in Lake Thoreau in July and August, 1987. It dredged in the West Cove area on two separate occasions, from July 13 to July 15, 1987, and from August 12 to August 20, 1987. Roger Lee White, a boat captain for Lake Services, was working in the West Cove area during these time periods. He was responsible for piloting the boat that propelled the barges between the dredging sites and the staging area.

Although White could not recall the exact date of an incident involving one of Lake Services' barges, he testified that it occurred about three days before Fairfax County employees began repair work on the sewer pipe lying across West Cove. The record shows that this repair work began on August 21, 1987. White testified that, at the time of the incident, he was piloting a boat that was pushing a loaded "hopper" barge out of West Cove.

A barge of this type is constructed of heavy gauge steel and has an open center compartment into which the dredged material is loaded. A loaded hopper barge has a depth below surface water level of as much as five to five and a half feet. This depth measurement is commonly referred to as its "draft."

White stated that he used his boat to push the hopper barge forward rapidly, in order to gain enough momentum to clear a sand bar located just outside the entrance to West Cove. During this maneuver, the barge struck a submerged object with sufficient force that the barge's movement was momentarily halted. The barge then broke free and White's boat pushed it out of West Cove. White reported the incident to Jackson, who instructed White "to keep [his] mouth shut." White later observed that the sewer pipe repair work was performed at the same location where the barge had struck the submerged object.

Jackson testified that the depth of the water to the bottom of Lake Thoreau, as well as the depth of any underwater objects, could be measured by "probing" the area. This activity involves the use of a rigid plastic pipe, 12 to 13 feet long, marked at one-foot intervals, which is lowered vertically into the water until it strikes either an object or the lake bed.

Jackson stated that he probed the lake bottom in the West Cove area on July 13, 1987, and found an old road that crossed the entire cove approximately four feet below water level. When asked whether he informed the other employees of this fact, Jackson replied, "Well, I don't recall the conversation."

Jackson also testified that one of his daily reports contained a notation that the barges crossing West Cove needed "to be lightened." Jackson stated that he sent his daily reports to Lake Services' office on a weekly basis. However, Jackson did not state whether the boat pilots or barge workers received any of the information contained in these reports. Further, the record is silent regarding whether, after July 13, 1987, Jackson or any other Lake Services employee probed the West Cove area to determine either the depth of the lake bed or the location of the County's sewer pipe.

In the days immediately after Lake Services' barge struck the submerged object, a very significant increase in the flow of sewage was registered "downstream" from the area where the sewer pipe crossed West Cove. This increase, discovered on August 21, 1987, was determined to be caused by a break in the pipe crossing West Cove. The break consisted of a jagged hole in the top half of the pipe.

The evidence also showed that, in August 1987, the only watercraft operating on Lake Thoreau other than Lake Services' equipment were small recreational boats and canoes. All of these craft were much smaller than Lake Services' barges.

At the conclusion of the Board's evidence, counsel for Lake Services moved to strike the evidence on the ground that "[e]xpert testimony is required to determine the standard of care as to what is reasonable and what is not." The trial court granted Lake Services' motion, stating:

> I'm compelled to agree with defense counsel. I don't think that a standard of care has been established.
>
> I don't think a jury can determine negligence here without some testimony showing what that standard is. Otherwise, in my view, they would be speculating completely.

The trial court then entered judgment in favor of Lake Services and this appeal followed.

The Board argues that the trial court erred in ruling that it failed to establish a prima facie case of negligence. The Board contends that expert testimony is not required here, because the issue, whether Lake Services took reasonable precautions to avoid a collision between its barge and a known underwater obstruction, is a matter as to which a jury is competent to form an intelligent opinion.

In response, Lake Services argues that dredging procedures are sufficiently technical in nature so as to require expert testimony to estab-

lish a standard of care. Based on the evidence presented, we disagree with Lake Services.

■ Expert testimony is inadmissible regarding "matters of common knowledge" or subjects "such that [persons] of ordinary intelligence are capable of comprehending them, forming an intelligent opinion about them, and drawing their own conclusions therefrom." *Richmond Newspapers, Inc. v. Lipscomb,* 234 Va. 277, 296, 362 S.E.2d 32, 42 (1987), *cert. denied,* 486 U.S. 1023 (1988). Thus, when the question presented can be resolved by determining what precautions a reasonably prudent person would have taken under like circumstances, no expert testimony is required or permitted. *See Commercial Distribs., Inc. v. Blankenship,* 240 Va. 382, 390, 397 S.E.2d 840, 845 (1990).

■ Further, expert testimony is admissible only when specialized skill and knowledge are required to evaluate the merits of a claim. *See id.* at 391, 397 S.E.2d at 845. Issues of this type generally arise in cases involving the practice of professions requiring advanced, specialized education, such as engineering, medicine, and law, or those involving trades that focus upon scientific matters, such as electricity and blasting, which a jury cannot understand without expert assistance. *Richmond Newspapers,* 234 Va. at 297, 362 S.E.2d at 43; *see Seaward Int'l, Inc. v. Price Waterhouse,* 239 Va. 585, 591-92, 391 S.E.2d 283, 287 (1990); *Nelson v. Commonwealth,* 235 Va. 228, 236, 368 S.E.2d 239, 243-44 (1988).

■ Here, the issue framed by the Board's evidence is whether Lake Services used ordinary care in dredging West Cove on or about August 18, 1987, given its knowledge of the fluctuating water level and the presence of known underwater obstructions. This issue does not concern a scientific matter that the jury required expert assistance to understand. Instead, it involves matters of common knowledge and basic calculation, as evidenced by Jackson's testimony at trial:

> Obviously, common sense would tell me that if . . . there is a four foot depth crossing the entire cove where this road lies, that we would have to lighten the barges. We could not have the barges drafting more than that to get across . . . .

We hold that a jury is capable of understanding this issue, and forming an intelligent opinion about it, without expert assistance. Therefore, we conclude that the trial court erred in striking the Board's evidence.

For these reasons, we will reverse the judgment of the trial court and remand the case for a new trial consistent with the principles expressed in this opinion.*

*Reversed and remanded.*

---

* Since Lake Services has not assigned cross-error here, we do not consider its argument that the Board failed to establish a prima facie case that the collision of Lake Services' barge with the sewer pipe was the proximate cause of any damages that the County incurred. Rule 5:18(b).