## WILLIAM B. SLOAN, T/A
## WILLIAM B. SLOAN COMPANIES

### V.

## DR. JOHN THORNTON

Record No. 940991

April 21, 1995

Present: All the Justices

494

*Denis C. Englisby (Englisby & Englisby*, on briefs), for appellant.

*Howard Feller (McGuire, Woods, Battle & Boothe*, on brief), for appellee.

JUSTICE LACY delivered the opinion of the Court.

The primary issue in this appeal is whether there was any credible evidence to support a jury verdict imposing personal liability on a limited partner for a debt of the partnership.

Kanawha Trace Development Partners (KTDP) is a Virginia limited partnership formed in 1984 to develop a condominium project. The initial limited partners were Jeffrey J. Rawn and Dr. John L. Thornton, each owning a 25 percent interest in the partnership. The general partners of KTDP were Rawn and Park-Sussex Development Corporation (PSDC). PSDC's capital stock was owned equally by Rawn and Thornton.

In the spring of 1987, William B. Sloan, doing business as William B. Sloan Companies, entered into a contract with KTDP to do construction work for the condominium project. KTDP did not pay Sloan for this work and filed a petition for bankruptcy in May 1988. Following dismissal of the bankruptcy case, Sloan sued

KTDP and recovered a judgment against the partnership for $184,040.31 plus interest and attorney's fees.

Sloan instituted the present action seeking to impose personal liability on Thornton for the judgment he received against KTDP.[1] Sloan alleged that Thornton was personally liable for KTDP's debt on three theories: (1) Thornton was a general partner of KTDP; (2) Thornton was a limited partner in control of KTDP; and (3) the trial court should pierce the corporate veil of PSDC, a general partner of KTDP, which would result in Thornton's liability for KTDP's debt to Sloan based on his stock ownership and position as a director of PSDC.

After a two-day trial, the jury returned a verdict in favor of Sloan. Thornton filed a motion to set aside the verdict as contrary to the law and evidence. Following briefing and argument by the parties, the trial court granted Thornton's motion, set aside the jury verdict, and ordered a new trial.

At the second trial, Thornton moved to strike Sloan's evidence on Sloan's theories that Thornton was either a general partner or a limited partner in control of KTDP. The trial court granted that motion and also refused to instruct the jury on Sloan's additional theories of personal liability based on common law partnership and joint entrepreneurship. The case was submitted to the jury solely on whether the corporate structure of PSDC, a general partner of KTDP, could be disregarded and personal liability imposed on Thornton. The jury returned a verdict in favor of Thornton, and the trial court entered judgment on that verdict.

On appeal, Sloan asserts the following assignments of error: (1) the trial court erred in setting aside the jury verdict rendered in the first trial; (2) the trial court erred in striking Sloan's evidence regarding Thornton's status as a general partner or limited partner in control in the second trial; and (3) the trial court erred in refusing Sloan's jury instructions on his theories of common law partnership and joint entrepreneurship in the second trial. In considering these issues, we are guided by the well-settled principles that a jury verdict must be sustained if there is any credible evidence to support it and that the evidence must be taken in the light most favorable to the party who received the jury verdict or against whom a motion to strike was made. *Board of Supervisors*

---

[1] Sloan initially named all former limited partners of KTDP as defendants, but nonsuited all but Thornton.

*v. Lake Services, Inc.*, 247 Va. 293, 294, 440 S.E.2d 600, 600 (1994); *Holland v. Shively*, 243 Va. 308, 309, 415 S.E.2d 222, 223 (1992).

## I. FIRST TRIAL

■ Debts of limited partnerships and corporations generally are not the personal liability of limited partners or corporate shareholders. A limited partner, however, may be liable for the obligations of the limited partnership if the limited partner is also a general partner or if he participates in the control of the business. Code § 50-73.24. Similarly, under certain conditions, the corporate structure may be disregarded or pierced and a shareholder or director of the corporation held personally liable for the corporation's debts. *O'Hazza v. Executive Credit Corp.*, 246 Va. 111, 431 S.E.2d 318 (1993); *Cheatle v. Rudd's Swimming Pool Supply Co.*, 234 Va. 207, 360 S.E.2d 828 (1987).

■ The jury's verdict in the first trial did not indicate the theory or theories on which it found Thornton personally liable for KTDP's debt. Therefore, we must review the record with regard to each theory advanced by Sloan to determine whether there was any credible evidence to support the jury's verdict.

### A. General Partner Status

Sloan asserts that the evidence showed that Thornton signed a guaranty contract with a title company in a manner which indicated that Thornton was a general partner. Reasonable persons, Sloan argues, could determine that this document, along with Rawn's assignment of his interests in PSDC and KTDP to Thornton, established Thornton as a general partner liable for the partnership debts. Thus, Sloan concludes, a jury issue was presented regarding Thornton's status as a general partner. We disagree.

■ Limited partnerships are governed by the Virginia Revised Uniform Limited Partnership Act, Code §§ 50-73.1 through -73.77. The Act provides that persons may be admitted as general partners of a limited partnership only in accordance with the provisions of the partnership agreement and that, when there is a change in the general partners, an amended certificate of limited partnership reflecting the addition or withdrawal of a general

partner must be filed with the State Corporation Commission. Code §§ 50-73.12, -73.27.

KTDP's partnership agreement provided, *inter alia*, that a person could become a general partner only if all general partners and 51 percent in interest of the limited partners consented. In addition, the partnership's counsel was required to issue an opinion stating that the new general partner was admitted in conformity with federal and state law. There is no evidence in this record that either the general partners or 51 percent of the limited partners consented to admitting Thornton as a general partner of KTDP, that the partnership's counsel issued an opinion that the transaction conformed with state and federal law, or that an amended certificate of partnership showing Thornton as a general partner of KTDP was filed with the State Corporation Commission.

■ A finding that one is a general partner must be based on proof of the statutory elements required for such status. Introducing evidence which suggests only the trappings of general partner status cannot create a jury question regarding whether an individual is a general partner. In this case, the jury was instructed on the statutory requirements for the admission of a general partner.[2] Based on the record in the first trial, there is no evidence that any of the statutory requirements were met and, therefore, there is no credible evidence to support a finding by the jury that Thornton was a general partner of KTDP.

## B. Limited Partner in Control

■ Sloan's second theory for imposing personal liability on Thornton for KTDP's debt to Sloan was that Thornton was a limited partner in control of the partnership. A limited partner in control is liable only to those "persons who transact business with the limited partnership reasonably believing, based upon the limited partner's conduct, that the limited partner is a general part-

---

[2] Instruction No. 7 stated in pertinent part:

A general partner is liable for the debts of the limited partnership . . . . In order to become a general partner in a limited partnership, all the general partners of the partnership must give their written consent and an amended certificate of limited partnership must be filed with the State within thirty days.

. . . .

The assignment of a general partnership interest in a limited partnership does not make the assignee a general partner of the limited partnership.

ner." Code § 50-73.24(A). The jury instruction on this issue repeated this statutory requirement verbatim.

Although Sloan points to a number of Thornton's actions which he asserts demonstrate that Thornton was in control of KTDP, Sloan testified that he personally had never met Thornton before the first trial, that he dealt directly with Rawn in matters concerning Sloan's contract with KTDP, and that Thornton was not involved in any of those negotiations. Sloan's testimony was consistent with Rawn's recollection. Furthermore, Thornton withdrew as a limited partner of KTDP on July 1, 1985, but was reinstated in April 1988 as a limited partner of KTDP with a 14 percent partnership interest. Therefore, Thornton was not a limited partner of KTDP during the spring and summer of 1987 when Sloan entered into and performed the contract with KTDP.

■ Considering the entire record, including Sloan's own testimony, we find that there was no credible evidence in the first trial to support a finding either that Thornton was a limited partner in control of KTDP based on Sloan's belief Thornton controlled KTDP or that Sloan relied in any way on Thornton's actions in contracting with KTDP.

### C. Piercing the Corporate Veil

■ The final theory asserted by Sloan in the first trial was that the trial court should pierce the corporate veil of PSDC, thereby holding Thornton personally liable because of his status as a shareholder and director of PSDC. The evidence cited by Sloan in support of this theory showed that Thornton did not know the telephone number, location, or assets of PSDC; did not know that he was a director of the corporation and did not receive a salary as a director; and that no directors' meetings were held. This evidence indicates that corporate formalities may not have been observed by the corporation, one of the indicia of a sham corporation. *See, e.g., Cheatle*, 234 Va. at 213, 360 S.E.2d at 831. Disregarding the corporate structure to impose liability on its shareholders or officers, however, is an extraordinary remedy which is undertaken only when necessary to avoid an injustice. *O'Hazza*, 246 Va. at 115, 431 S.E.2d at 320.

■ The jury received three instructions on this theory. Instruction No. 12 stated that "[i]n order to pierce the corporate veil and impose liability on *a shareholder* for the corporation's debts, the plaintiff has the burden to prove that Park Sussex Development

Corporation was a sham corporation" (emphasis added). Instruction Nos. 13 and 14 stated, respectively, that "[i]n order to impose liability on *Dr. Thornton*, as shareholder, for the debts of the corporation," Sloan had the burden to prove that PSDC was the "alter ego, alias, stooge, or dummy corporation of Dr. Thornton" or was "used by Dr. Thornton to disguise a wrong or obscure a fraud by Dr. Thornton" (emphasis added). Under these instructions, even if Sloan met his burden of proof for piercing the corporate veil under Instruction No. 12, Thornton could be held personally liable as a shareholder of the corporation only if the evidence showed that PSDC was Thornton's alter ego, Instruction No. 13, or was used by Thornton to disguise a wrong or obscure a fraud he committed, Instruction No. 14. No evidence of either of these conditions was introduced in the first trial. Accordingly, there is no credible evidence to support a jury verdict that, through the mechanism of piercing the corporate veil of PSDC, Thornton was personally liable for the debts of PSDC, a corporate general partner in KTDP, and consequently liable for KTDP's debt to Sloan.[3]

In summary, we conclude that, considering the evidence and instructions to the jury, there was no credible evidence produced in the first trial which would have supported a finding that Thornton was a general partner of KTDP, was a limited partner in control of KTDP during the period Sloan negotiated with and performed work for KTDP, or that Thornton could be held personally liable for the debts of PSDC by piercing the corporate veil of that corporation. Accordingly, the trial court did not err in setting aside the jury verdict in the first trial.

## II. SECOND TRIAL

### A. Motions to Strike

 Sloan complains that, in the second trial, the trial court erroneously struck his evidence on his theories that Thornton was liable as a general partner or as a limited partner in control. Sloan

---

[3] At the post-trial hearing considering Thornton's motion to set aside the verdict, Thornton argued that imposition of personal liability for the debts of a corporation could be imposed only if all the conditions set out in Instruction Nos. 12, 13, and 14 were satisfied, citing *Perpetual Real Estate Services, Inc. v. Michaelson Properties, Inc.*, 974 F.2d 545 (4th Cir. 1992). In the second trial, the jury was instructed that all conditions must be found in order to pierce the corporate veil and impose personal liability on a shareholder. The jury's finding in favor of Thornton on this issue in the second trial was not the subject of an assignment of error.

asserts that, in addition to the evidence and exhibits introduced in the first trial, he introduced "even more evidence and exhibits" in the second trial to support these theories. Nevertheless, as in the first trial, no evidence was introduced showing compliance with the statutory requirements for admission of a general partner to a limited partnership, Code §§ 50-73.11, -73.27, or for imposition of liability on a limited partner in control pursuant to Code § 50-73.24(A). No amended partnership certificate was produced and there was no evidence that Sloan transacted business with KTDP reasonably believing, based on Thornton's conduct, that Thornton was a general partner. In the absence of such evidence, for the reasons previously discussed, we hold that the trial court did not err in granting Thornton's motion to strike the evidence on these two theories of liability.

### B. Denial of Jury Instructions

Sloan's final assignments of error challenge the trial court's refusal of two jury instructions which reflected additional theories of liability not presented in the first trial.[4] The first instruction was based on a theory of common law partnership and the second on a theory of joint entrepreneurship. The trial court denied these instructions, finding that Sloan had not identified either theory as a basis for recovery prior to the time the instructions were offered and that neither theory could preempt the statutory requirements governing a limited partnership. We agree.

Our jurisprudence prohibits the entry of judgment on a right not pleaded and claimed. *Ted Lansing Supply Co. v. Royal Aluminum & Constr. Corp.*, 221 Va. 1139, 1141, 277 S.E.2d 228, 229 (1981). The pleadings in this case do not assert that Thornton is personally liable to Sloan under a theory of common law partnership or joint entrepreneurship. In Sloan's responses to interrogatories propounded by Thornton prior to the first trial, only the liability theories that Thornton was a general partner or a limited partner in control, or that the corporate veil should be pierced, and facts relied upon to support those theories, were identified.

---

[4] Sloan's assignments of error state that the trial judge erred in striking his *evidence* and instructions on these two theories of liability; however, the record reflects that the trial court did not strike any evidence in connection with the denial of instructions on these two theories of recovery.

The supplemental discovery provided prior to the second trial did not materially alter Sloan's previous responses.

The jury instructions in question were not provided to Thornton until Thornton made his motion to strike Sloan's evidence in the second trial. Even though Sloan argues that testimony adduced for the first time in the second trial supported his alternate theories, the record shows that the crux of this "new testimony," that Rawn and Thornton were in the project for a profit, was merely a repetition of testimony adduced in the first trial.

■ Finally, the trial court correctly held that the proposed jury instructions were improper. Sloan never asserted that KTDP was anything other than a limited partnership. The liabilities of limited partners for the debts of limited partnerships are governed by the Virginia Revised Uniform Limited Partnership Act, not the common law. *See, e.g., R.S. Oglesby Co. v. Lindsey*, 112 Va. 767, 773, 72 S.E. 672, 676 (1911). Therefore, the proffered instructions were improper under the circumstances of this case.

■ In conclusion, for the reasons stated, we find no error in the actions of the trial court in setting aside the first jury verdict, in striking Sloan's evidence on his liability theories of general partner and limited partner in control in the second trial, and in refusing Sloan's requested jury instructions on common law partnership and joint entrepreneurship in the second trial. Accordingly, we will affirm the March 16, 1994 judgment of the trial court.

*Affirmed.*